(No. 11407.—Decree affirmed.)

WALLACE G. CLARK *et al.* Appellees, *vs.* L. M. COURTER *et al.*—(L. M. COURTER, Appellant.)

*Opinion filed October 23, 1917—Rehearing denied Dec. 6, 1917.*

1. BROKERS—*liability of principal cannot be determined in suit among brokers to which principal is not a party.* In a suit in chancery among real estate brokers to divide commissions in a real estate trade, the liability of one of the principals in the transaction for commissions to one of the brokers cannot be determined where the principal is not a party to the suit.

2. ARBITRATION—*conditions to be observed by arbitrators are determined by agreement between parties to the controversy.* It is the agreement between the parties submitting a matter in controversy for arbitration that fixes the conditions, limitations and restrictions to be observed by the arbitrators in making their award.

3. SAME—*presumption is in favor of validity of award.* Every presumption is in favor of the validity of an award, and it is incumbent upon the party objecting thereto to show that the conditions were not complied with by the committee of arbitration.

4. SAME—*when party cannot object to award because another was not made a party to arbitration proceeding.* Where a controversy between real estate brokers over commissions is settled by arbitration, a party to the arbitration agreement cannot object to the validity of the award because another broker was not made a party to the agreement, where the amount awarded to him would not have been changed had the other broker been made a party.

APPEAL from the Circuit Court of Cook county; the Hon. FREDERICK A. SMITH, Judge, presiding.

FREDERICK A. BROWN, (CLAUDE O. NETHERTON, and JESSE J. HERR, of counsel,) for appellant.

ALLEN G. MILLS, MONTGOMERY, HART, SMITH & STEERE, and BENTLEY, BURLING & KUMLER, (JASPERSEN SMITH, and EDW. B. BURLING, of counsel,) for appellees.

Mr. JUSTICE COOKE delivered the opinion of the court:

This is a controversy among brokers over commissions upon the exchange and sale of real estate. On March 1, 1913, and prior thereto, George H. Karcher was the owner

of certain real estate on the Calumet river, in Cook county, referred to in this record as the Calumet acres, and John S. Phipps, Henry C. Phipps and Howard C. Phipps were the owners of certain scattered lots in the city of Chicago. Some time during the year 1908 Karcher listed the Calumet acres with appellant, L. M. Courter, a real estate broker. In 1910 Courter brought the Calumet acres to the attention of David T. Layman, the Chicago representative of the Phippses, and suggested to Layman a plan by which the Phipps lots could be conveyed to Karcher in part payment for the Calumet acres. Courter at his expense took Layman to see the Calumet acres, and Layman gave Courter a list of the Phipps lots, with the valuations thereon, which Courter submitted to Karcher. In October, 1912, Layman still having the proposed trade under consideration, consulted with appellee James H. VanVlissingen, another real estate broker, concerning the purchase of the Calumet acres. Shortly afterwards Layman called Courter to his office, where Courter met VanVlissingen and was informed by Layman that VanVlissingen would represent the Phippses in further negotiations regarding the proposed trade and that Courter and VanVlissingen could divide the commissions as they saw fit. Courter at first objected to VanVlissingen participating in the commissions, but finally agreed· that the commissions paid by the Phippses and by Karcher should be divided equally between them. The Calumet acres had since 1909 also been listed with appellees Wallace G. Clark and J. Milton Trainer, co-partners doing a real estate brokerage business under the firm name of Clark & Trainer. Previous to the conference between Layman, Courter and VanVlissingen, Clark and Trainer had told VanVlissingen that the Calumet acres were listed with them. The Phippses had declined to entertain the plan evolved and submitted by Courter to Layman and by the latter submitted to the Phippses. After the agreement between Courter and Van-Vlissingen to divide the commissions in case a trade were

effected between Karcher and the Phippses, and during No-vember, 1912, VanVlissingen, without consulting Courter, called Clark and Trainer to Layman's office and conferred with them concerning the proposed trade. Thereafter, although Courter frequently offered his services, he was ignored in the negotiations between Karcher and the Phippses, which finally resulted in a trade substantially in accordance with the plan and upon the terms suggested to Layman by Courter.

In February, 1913, Wyllys Baird, another real estate broker, called upon Karcher and stated that he thought he had a purchaser, Charles F. Marsh, for part of the Calumet acres. Karcher referred Baird to Clark and Trainer, who in turn conferred with Layman and VanVlissingen regarding the making of the proposed trade between Karcher and the Phippses in case Marsh would agree to purchase a portion of the Calumet acres from the Phippses for cash. The proposition was submitted to and finally accepted by the Phippses on condition that the sale to Marsh could be effected, and contracts were executed by Karcher, the Phippses and Marsh on or about March 1, 1913, by which Karcher agreed to convey the Calumet acres to the Phippses, who in turn agreed to convey a portion thereof to Marsh, and the Phippses agreed to convey their scattered lots in Chicago to Karcher. These agreements were thereafter carried out.

Entirely disconnected with the Karcher-Phipps-Marsh deal, the Pullman Land Association sold and conveyed to the H. W. Johns-Manville Company a tract of land on the Calumet river. Clark and Trainer claimed all of the brokers' commissions paid by the Pullman Land Association on account of this sale, while VanVlissingen claimed that he and Peter Meyn, another real estate broker, had participated in effecting this sale and were entitled to one-half of the commissions.

The Phippses paid VanVlissingen $4950.50 for commissions on the trade of their scattered city lots to Karcher. Karcher gave to Clark and Trainer notes aggregating $9000, secured by mortgage upon some of the scattered lots which he had received from the Phippses, for commissions upon the sale or trade of the Calumet acres to the Phippses. Subsequently Karcher sold some of these lots, paid to Clark and Trainer $4500 in cash from the proceeds of sale, and conveyed to Charles E. Thacker, for Clark and Trainer, lots of the value of $4500 over and above the incumbrances thereon. The Phippses paid to Clark and Trainer for commissions on that portion of the Calumet acres sold to Marsh $7679.41, and the Pullman Land Association paid to Clark and Trainer for commissions on the sale to the H. W. Johns-Manville Company $6532.50.

Trainer and VanVlissingen were members of the Chicago Real Estate Board, which had in force by-laws providing, among other things, that whenever members were unable to agree concerning the division of commissions resulting from any sale which they may have jointly negotiated, either member interested in the transaction might submit the matter in writing to the reference and arbitration committee of the board, which committee should determine the rights of the parties to the controversy, and that any decision rendered by a majority of the committee should be final and binding on the parties to the controversy. A controversy having arisen between Clark and Trainer and VanVlissingen concerning the division of the various commissions above mentioned, and Trainer and VanVlissingen being members of the Chicago Real Estate Board, VanVlissingen submitted to the reference and arbitration committee of the board a statement in writing of the matters in controversy, whereupon that committee notified Trainer of the filing of the written statement. Clark was not a member of the Chicago Real Estate Board and at first refused to submit the controversy to the reference and arbitration com-

mittee of the Chicago Real Estate Board. He was finally induced by Wetton, the chairman of the reference and arbitration committee, to join in the following agreement, which was reduced to writing and signed by Clark, Trainer, VanVlissingen and Meyn:

"CHICAGO, *January 30, 1914.*
*"Reference and Arbitration Com. of Chicago Real Estate Board:*

"We, the undersigned, agree to abide by the decision of your committee in all matters in controversy now pending and under consideration of your committee."

Thereafter the reference and arbitration committee investigated the claims of the various parties and made two awards in writing, joined in by all the members of the committee, as follows:

"In the matter of the controversy submitted to the reference and arbitration committee of the Chicago Real Estate Board by Wallace G. Clark and J. Milton Trainer, as a partnership, and J. H. VanVlissingen, concerning a division of commissions paid in connection with an exchange of certain acres on the Calumet river belonging to George H. Karcher with the Messrs. Phipps, of New York City, for certain scattered lots owned by the Messrs. Phipps, of the city of Chicago, and a sale of part of said Karcher acres by the Messrs. Phipps to one Marsh, through Wyllys W. Baird, this committee, after a full hearing of oral evidence and a careful examination of the various written statements filed in connection with this case, find and decide as follows:

"1. The firm of Clark & Trainer and J. H. VanVlissingen acted together as brokers in the exchange of said Karcher acres for said lots belonging to said Phipps. In the opinion of this committee all commissions and profits earned by said Clark & Trainer and said VanVlissingen in this exchange should be divided equally between them, as follows:

"(*a*) One-half of the commissions paid by said Phipps to said VanVlissingen should be paid to Clark & Trainer.

"(*b*) One-half of the cash paid by said Karcher to said Clark & Trainer shall be paid to said VanVlissingen.

"(*c*) The adjustment by which Clark & Trainer agree to accept certain lots from Karcher for commissions in lieu of cash is ratified, and it is the decision of this committee that of the lots deeded by said Karcher to Charles Thacker for the benefit of said Clark & Trainer and said VanVlissingen, one-half (in value) shall be conveyed to any party designated by said VanVlissingen and

one-half (in value) shall be conveyed to any party designated by said Clark & Trainer.

"2. The sale to said Marsh by Messrs. Phipps of a portion of said Karcher acres was, in the opinion of this committee, a part of the original Karcher-Phipps transaction, and this committee therefore directs that one-half of the commissions paid by Messrs. Phipps to Clark & Trainer for said sale to Marsh shall be paid by them to said VanVlissingen.

"As this controversy has been under discussion for some time, it seems fair to this committee that this decision should be carried out as soon as possible.

"This committee retains jurisdiction over this controversy until this decision is carried out."

"In the matter of the controversy submitted to the reference and arbitration committee of the Chicago Real Estate Board by the firm of Clark & Trainer and J. H. VanVlissingen and Peter Meyn concerning a division of the commissions paid by the Pullman Company for the sale of certain acres on the Calumet river, known as the Pullman Dairy Farm, to the H. W. Johns-Manville Company, this committee, after a full hearing of oral evidence and a careful examination of the various written statements filed in connection with this case, finds and decides as follows:

"The commissions paid to Clark & Trainer by the Pullman Company for the sale of said acres is to be divided as follows: One-half to be retained by the firm of Clark & Trainer; one-half shall be paid by Clark & Trainer to J. H. VanVlissingen, who in turn shall pay one-half of the amount he received to Peter Meyn.

"As this controversy has been under discussion for some time, it seems fair to this committee that this decision should be carried out as soon as possible.

"This committee retains jurisdiction over this controversy until this decision is carried out."

Appellant, Courter, was not a party to the arbitration proceedings.

On May 8, 1914, Courter instituted an attachment suit against VanVlissingen in the municipal court of Chicago to recover $3000 claimed by Courter as his share of the commissions received by VanVlissingen from the Phippses, and garnisheed Clark and Trainer. On the same day he instituted another suit in the superior court of Cook county against Clark and Trainer for $10,000, based on the theory that Clark and Trainer had received and held in their hands

commissions belonging to him. Thereafter, on May 22, 1914, Clark and Trainer filed their bill of complaint in the circuit court of Cook county against Courter and VanVlissingen, which, as thereafter amended, alleges that they and the defendant VanVlissingen had respectively received commissions as above stated, and that Courter and VanVlissingen were both claiming one-half of the commissions received by the complainants, and that Courter had instituted the suits above mentioned against the complainants to recover the commissions claimed by him and by VanVlissingen. The prayer of the bill is, that except as to the commissions upon the sale by the Pullman Land Association to the H. W. Johns-Manville Company, all of which are claimed by the complainants, the defendants Courter and VanVlissingen be required to interplead and settle and adjust their demands between themselves; that VanVlissingen be required to account to the complainants for one-half of the commissions received by him from the Phippses, and that Courter be restrained from proceeding against the complainants in the suits at law instituted by him against them. The complainants offered to pay the sums due to the defendant to whom the same should in the judgment of the court appear of right to belong, and to convey the title to one-half of the lots received for commissions from Karcher to whichever of the defendants is justly entitled to receive the same. A temporary injunction was granted restraining Courter from proceeding with his suits at law against Clark and Trainer.

VanVlissingen answered the bill, alleging that he was the agent of the Phippses and was authorized by them to procure a sale of the real estate owned by them, and that Clark and Trainer agreed to, and did, join their efforts and services in procuring and bringing about the sales from Karcher to the Phippses, and from the Phippses to Karcher, and from the Phippses to Marsh, and that it was agreed between VanVlissingen and Clark and Trainer that the

commissions earned by them jointly as a result of said sales were to be pooled and divided equally, one-half to Clark and Trainer and one-half to VanVlissingen. With reference to the sale by the Pullman Land Association to the H. W. Johns-Manville Company, VanVlissingen in his answer alleges that he and Clark and Trainer agreed to, and did, combine their services and efforts as real estate brokers in making that sale, and that it was expressly agreed between them that the commissions from such sale should be divided between Clark and Trainer and VanVlissingen, one-third to Clark and Trainer and two-thirds to VanVlissingen, it being understood and agreed that Meyn would assist VanVlissingen in negotiating the sale and that VanVlissingen should pay one-half of the commissions received by him to Meyn. The answer then sets up the submission to, the proceedings before and the findings and decision of the reference and arbitration committee of the Chicago Real Estate Board and the refusal of Clark and Trainer to abide by or comply with the terms of the award, and claims commissions as awarded by that committee. The answer denies that Courter has ever claimed any of the commissions from the sale by the Pullman Land Association to the H. W. Johns-Manville Company, and denies that Courter, although claiming the same, has any right in or title to any of the commissions upon the other sales above mentioned.

Courter also answered the bill, alleging that he was the agent of the Phippses and was employed and authorized by them to procure a sale or exchange of the Chicago scattered lots, and that the Phippses promised and agreed to pay him a commission of five per cent for negotiating and bringing about the sale or exchange of their property for the Calumet acres; that he was also employed by Karcher to procure a sale or exchange of the Calumet acres, and that Karcher agreed to pay him a commission of five per cent for the exchange of that property; that he brought the Phippses and Karcher together, and as a result of his

efforts the sales from Karcher to the Phippses, from the Phippses to Karcher, and from Karcher to Marsh, were effected; that during the progress of the negotiations which resulted in these sales, and on or about November 1, 1912, it was agreed between him (Courter) and VanVlissingen that the latter should assist in the negotiations and should receive for his services one-half of the commissions to be paid by Karcher and the Phippses; that he (Courter) did not employ nor consent to the employment of Clark and Trainer, and if Clark and Trainer are entitled to compensation for any services it is the debt and obligation of others than Courter; that he (Courter) is entitled to one-half of all commissions paid by Karcher and the Phippses to Clark and Trainer and VanVlissingen, including the lots conveyed to Thacker for Clark and Trainer, and that Clark and Trainer should be decreed to pay to him (Courter) one-half of the moneys received by them from Karcher and to convey to him a one-half interest in the lots received from Karcher, and in addition thereto to pay him one-half of the amount received by VanVlissingen from the Phippses, it being alleged in the answer that VanVlissingen is insolvent.

The cause was referred to the master to take the proofs and report the same, together with his conclusions, to the court. Thereafter Peter W. Meyn filed an intervening petition, claiming one-fourth of the commissions upon the sale by the Pullman Land Association to the H. W. Johns-Manville Company by virtue of an alleged agreement with Clark and Trainer and VanVlissingen and by virtue of the award made by the reference and arbitration committee of the Chicago Real Estate Board. VanVlissingen also filed a cross-bill, setting up substantially the same facts as were alleged in his answer, and praying that Clark and Trainer be required to abide by and fully perform the awards made by the reference and arbitration committee of the Chicago Real Estate Board.

Clark and Trainer answered the cross-bill, denying that VanVlissingen participated in any of the negotiations which resulted in the sale by the Phippses to Marsh or in the sale by the Pullman Land Association to the H. W. Johns-Manville Company, and denying that he is entitled to any of the commissions received by them upon such sales. They allege that at and prior to the time of submitting the controversy respecting said commissions to arbitration it was expressly agreed by the committee, as a condition upon which the arbitration would proceed, that no hearsay or irrelevant testimony would be considered by the committee, and that all testimony would be taken in shorthand and written up and distributed among the various members of the committee and the claimants of the fund before any award would be made; that the committee wholly disregarded such agreement and admitted and considered irrelevant, incompetent and immaterial testimony, and refused to have the testimony written up that was taken in shorthand at all of the hearings although frequently requested so to do; that the findings and awards made by the committee are null and void and are not binding upon any of the parties thereto because certain members of the committee were absent during portions of the hearings and did not hear all the evidence; that they, Clark and Trainer, at the time consented to proceed with the hearing in the absence of those members upon the express condition and with the distinct understanding that the testimony would all be written up and read by the members of the committee before any finding or award would be made; that the committee read and considered as evidence certain written statements or documents submitted to the committee for consideration without the knowledge or consent of Clark and Trainer and without any opportunity on their part to reply to the same; that the committee, or certain members thereof, also without the knowledge of Clark and Trainer, held verbal conferences with persons claiming to have knowledge of the

facts in dispute and discussed the merits of the subject matter of the arbitration with such persons before making the awards; that the awards are unintelligible and incapable of being carried into effect without first hearing additional and extraneous evidence, in that they fail to show the amounts of money found to be due, or any means of computing the same, or the value, amount or location or description or method of any proposed division of the real estate required to be conveyed by Clark and Trainer to VanVlissingen. The award is also attacked by the answers to the cross-bill upon the ground that although Courter claimed, and still claims, an interest in the various commissions in controversy, he was not a party to the arbitration proceedings.

The cause was again referred to the master to take evidence upon the issues joined upon the cross-bill of VanVlissingen and to report his conclusions of law and fact thereon, the master being directed first to determine whether or not the awards by the reference and arbitration committee of the Chicago Real Estate Board are valid before taking testimony upon the merits of the controversy between Clark and Trainer and VanVlissingen. The master found that the awards are valid and binding upon the parties thereto and should be enforced by the court in this proceeding, and that by virtue of the awards Clark and Trainer are entitled to one-half of the commissions on all the sales and exchanges of property above mentioned, and that as between Clark and Trainer, VanVlissingen and Meyn, VanVlissingen is entitled to one-half of the commissions on all of such sales except the sale by the Pullman Land Association to the H. W. Johns-Manville Company, on which Van-Vlissingen is entitled to one-fourth of the commissions and Meyn to the remaining one-fourth. The master further found that there was no agreement between Clark and Trainer and Courter with reference to a division of commissions, and that Courter has no rightful claim to the fund in controversy except by virtue of his agreement with Van-

Vlissingen, and that under his agreement with VanVlissingen he is entitled to one-half of whatever VanVlissingen received or was entitled to receive on account of the sale of the Calumet acres by Karcher to the Phippses and of the scattered city lots by the Phippses to Karcher, and whether Courter is entitled to other commissions from Karcher can not be determined in this suit, as Karcher is not a party hereto. The master further found that Clark and Trainer had paid out and expended $1197.10 on account of the lots received from Karcher as commissions upon the sale of the Calumet acres to the Phippses, of which VanVlissingen and Courter should each pay one-fourth thereof.

Objections filed by each of the parties to the master's report were overruled by the master. These objections were renewed as exceptions in the circuit court and were overruled, and a decree was entered in accordance with the master's findings, directing Clark and Trainer to pay to Meyn $1633.13, to Courter $1966.15, and to certain assignees of VanVlissingen, who had filed interpleas, the sum found due by the court upon the accounting from Clark and Trainer to VanVlissingen, all costs of suit to be paid by Clark and Trainer. The decree also required Clark and Trainer to convey to Courter one of the lots received by them as commissions from Karcher, and ordered that Courter receive the amount of money and the lot awarded him by the decree in full of all claims against any of the parties to this suit, and that he be enjoined and restrained from prosecuting his suits at law against Clark and Trainer and VanVlissingen. From that decree Courter has prosecuted this appeal, contending that he is entitled to one-half of all commissions upon the sale of the Calumet acres by Karcher to the Phippses and one-half of all commissions upon the sale of the scattered city lots by the Phippses to Karcher, and that Clark and Trainer should be required to pay him $4500 cash on account of his portion of the commissions upon the sale of the Calumet acres to the Phippses, instead

of being permitted to convey lots in satisfaction of a portion thereof. Clark and Trainer have assigned cross-errors attacking the decree in so far as it holds the award of the reference and arbitration committee of the Chicago Real Estate Board valid and binding and allows VanVlissingen and Meyn one-half of the commissions upon the sale from the Phippses to Marsh and upon the sale by the Pullman Land Association to the H. W. Johns-Manville Company.

The argument on behalf of Courter is an attempt to establish his right, as a real estate broker, to commissions upon the sale of the Calumet acres by Karcher to the Phippses and upon the sale of the scattered city lots owned by the Phippses to Karcher, the contention being that as Courter started the negotiations which culminated in these sales he would, in the absence of any agreement to divide the commissions with another broker, have been entitled to full commissions upon each of those sales, but that as he agreed with VanVlissingen to divide the commissions with him, he is entitled to one-half of the commissions upon the two sales. Whether Courter's connection with the negotiations which led up to the Karcher-Phipps deal was such as to entitle him to broker's commissions from Karcher and the Phippses is not material to any question presented upon the record now before us. Neither Karcher nor the Phippses are parties to this suit, and the question of their liability to Courter for commissions cannot, therefore, be here determined. The only relief which Courter can obtain in this proceeding is the enforcement of such agreements as he has made with the parties hereto. He has shown no agreement with Clark and Trainer with reference to the division of commissions. He claimed before the master and before the chancellor that he had entered into an agreement with VanVlissingen that the commissions received should be equally divided between them. While VanVlissingen denied that such agreement had been made, the decree finds that it was in fact made and enforces its provisions by re-

quiring the payment to Courter of one-half of the commissions received by VanVlissingen from those sales, and VanVlissingen is not complaining of the finding against him. Karcher paid the commissions upon the sale of the Calumet acres to Clark and Trainer, and neither VanVlissingen nor Courter can compel Clark and Trainer to turn over to them, or either of them, any part of the commissions so received unless by virtue of some agreement to which Clark and Trainer were parties. It is not contended that Clark and Trainer made any agreement to turn over to Courter any of the commissions received from Karcher. Whether Karcher is also liable to Courter for commissions is the only question the decision of which might entitle Courter to more than he has been awarded by the decree in this case, but, as before stated, Karcher is not a party to this suit and that question cannot be here determined.

Courter complains that the court erred in requiring him to accept a conveyance of a portion of the property taken by Clark and Trainer as commissions upon the sale of the Calumet acres by Karcher to the Phippses. This was a part of the relief which Courter by his answer expressly asked be awarded him, and he cannot now question the action of the court in that regard. So far as Courter is concerned the decree is right.

In support of their contention that the circuit court erred in holding valid the award made by the reference and arbitration committee of the Chicago Real Estate Board, appellees Clark and Trainer urge various matters which they insist render the award void. They contend that as a part of the agreement submitting the matters in controversy to arbitration it was agreed that all testimony heard by the committee would be taken in shorthand and a transcript of the shorthand notes delivered to each of the parties and each member of the committee before making the award; that they were not furnished with such transcript, and the award is for that reason not binding upon them.

This contention is based upon the testimony of Clark and Trainer to the effect that when Wetton, the chairman of the reference and arbitration committee, was urging Clark to submit the controversy to that committee for arbitration he stated that the evidence would be taken in shorthand, the shorthand notes transcribed and a copy furnished each party and each member of the committee. It does not appear that VanVlissingen and Meyn were present at or participated in this conversation. Shortly afterwards, Clark, Trainer, VanVlissingen and Meyn signed the written submission to arbitration above set out, which does not contain any such provision. It is the agreement between the parties submitting the matters in controversy for arbitration that fixes the conditions, limitations and restrictions to be observed by the arbitrators in making their award, (*Buntain* v. *Curtis,* 27 Ill. 374,) and as there was no agreement between Clark and Trainer and VanVlissingen and Meyn requiring a transcript of the shorthand notes to be furnished each party and each member of the committee, the award cannot be successfully attacked on the ground that Clark and Trainer were not furnished with a transcript of the testimony taken before the arbitration board.

The answers filed by Clark and Trainer to the cross-bill allege, and the evidence offered by them shows, that at times during the hearing before the arbitration committee certain members of the committee were temporarily absent, and that counsel for Clark and Trainer objected to proceeding with the hearing in the absence of such members, but upon being informed by the chairman of the committee that "the testimony would all be written up and read by the committee before any finding or award would be made," consented to proceed with the hearing in the absence of such members. It is contended that the shorthand notes of the testimony were never transcribed, the condition upon which Clark and Trainer consented that the hearing might proceed in the absence of members of the committee was

not complied with, and those members of the committee who were absent for short spaces of time did not have an opportunity to consider all the evidence in reaching a decision. There would be force to this contention if based upon the record. There is no proof, however, that the shorthand notes were not transcribed and the evidence read by the committee before the award was made. The only proof upon this subject is the testimony of Clark and Trainer that they had not been furnished with a copy of the evidence, but it will not be presumed therefrom that the shorthand notes were not transcribed and the evidence read by the committee. Wetton, the chairman of the committee, testified on behalf of VanVlissingen upon the trial of this cause and was cross-examined by counsel for Clark and Trainer regarding the proceedings before the committee, but he was not asked whether the shorthand notes were transcribed and the evidence read by the committee, as he stated would be done. Clark and Trainer having consented to waive their objections and proceed with the hearing in the absence of members of the committee on condition that the evidence would be transcribed and read by the committee before any award was made, it was incumbent on them to show that this condition was not complied with, as every presumption is in favor of the validity of an award. *White Star Mining Co.* v. *Hultberg,* 220 Ill. 578.

It is further urged that the award is void because it does not describe the lots to be conveyed by Thacker to VanVlissingen. This is a purely technical objection and cannot be made the basis for setting aside the award in this case. The original bill filed by Clark and Trainer herein alleged that either VanVlissingen or Courter was entitled to one-half in value of the lots held by Thacker, and offered to convey the same to the one found entitled thereto. The decree found that VanVlissingen and Courter were each entitled to one-fourth of the lots and ordered conveyance accordingly, describing the property to be conveyed to each. The

decree in this respect was properly based on the allegation and offer made by the original bill of complaint, irrespective of the award made by the reference and arbitration committee with reference to the disposition of the lots held by Thacker.

It is contended that the award is void because Courter was not a party to the arbitration proceedings. Inasmuch as Courter's only claim to the fund in controversy arises out of a contract with VanVlissingen to which Clark and Trainer were not parties, their interests in the subject matter of the arbitration proceedings could not have been affected by either the presence or absence of Courter as a party thereto. Had Courter been a party it could neither have increased nor diminished the amount awarded to Clark and Trainer, hence they were not prejudiced and cannot attack the award on the ground that Courter was not a party to the arbitration proceedings.

It is finally contended that the award is void because it appears from the face of the award that the arbitrators retained jurisdiction of the parties and subject matter for future action. It appears from the by-laws of the Chicago Real Estate Board that the penalty for refusal to abide by an award made by the reference and arbitration committee of the board is suspension or expulsion from the board, and it is clear that the provision retaining jurisdiction over the controversy until the decision should be carried out was inserted in the award for the sole purpose of enforcing the award. The award itself was final and determined the controversy between the parties upon the merits.

The decree of the circuit court is affirmed.

*Decree affirmed.*