Theodore PAPAPETROPOULOUS,
Plaintiff-Appellant,

v.

MILWAUKEE TRANSPORT SERVICES,
INC., Defendant-Appellee.

No. 85–1950.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 8, 1986.

Decided July 2, 1986.

Kenneth J. Murray, Murray & Moake, Milwaukee, Wis., for plaintiff-appellant.

George K. Whyte, Jr., Quarles & Brady, Milwaukee, Wis., for defendant-appellee.

Before BAUER, WOOD and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

The appellant, Theodore Papapetropoulous, appeals the order of the district court dismissing his complaint alleging that the appellee, Milwaukee Transport Services, Inc. ("MTS"), terminated him (Papapetropoulous) from his job as a bus driver without due process of law. We affirm.

## I

The decision of the arbitrator, who upheld the termination of Papapetropoulous, was attached to Papapetropoulous' complaint and reveals that Papapetropoulous was employed as a bus driver for the Milwaukee Transport Services, Inc. and was a member of the Amalgamated Transit Union, Local 998. He was discharged on April 13, 1983, for violating Work Rule 15 of the Collective Bargaining Agreement prohibiting indecent, immoral or improper conduct while on duty or on MTS's property and Work Rule 16 prohibiting unlawful conduct while on duty or on MTS's property. The charge of violating the Work Rules was that Papapetropoulous sexually assaulted an adolescent resident of the Child and Adolescent Treatment Center ("CATC") on March 9, 1983 while on duty as a bus driver. Decision of Arbitrator at 4.[1] The record, including the arbitrator's decision reveals that the alleged assault took place when Papapetropoulous stopped his bus at a designated MTS bus stop, approached the young woman, who was the only passenger on the bus, and "forcibly fondled the young woman, asking her to take part in several sexual acts." Id. After leaving the bus, the young woman informed a social worker, Kathleen Golden, at the CATC of the attack. Golden relayed this information to Hal Bursten, the Administrator at CATC, who in turn informed the MTS. The Milwaukee Transport Services conducted an investigation, together with an independent investigation by the Milwaukee County Sheriff's Department, into the alleged incident and based upon that information and "a letter from John N. Lemerond, clinical psychologist at CATC, as well as a memorandum report from Ms. Kathleen Golden, a psychiatric social worker at CATC,"[2] terminated Papapetropoulous from his position as an MTS bus driver on April 13, 1983.

The union filed for arbitration to contest the validity of Papapetropoulous' discharge pursuant to Article VI paragraph 6.01 of the Collective Bargaining Agreement. The union and MTS selected an arbitrator from the Federal Mediation and Conciliation Service to conduct the hearing and render a judgment as to the propriety of MTS's action in discharging Papapetropoulous. Id. at 2. The union, Papapetropoulous and MTS each were represented by counsel at this hearing. At the hearing, Papapetropoulous denied "that any of the events which transpired on March 9, 1983, occurred, as described by the complaining witness." Id. at 8. The young woman testified on direct examination that Papapetropoulous was the person who assaulted her. Id. at 7. A review of the arbitrator's decision reveals that during the union's cross-examination of the young woman, she "became emotional, crying and was unable to answer questions on several occasions." Id. at 5. After the witness was unable to

---

1. The Child Adolescent Treatment Center is located on the County Institution grounds in the City of Wauwatosa, Wisconsin.

2. The Milwaukee County Sheriff's Department conducted an independent investigation into the incident. However, the findings from the Sheriff Department's investigation are not contained in the record before this court as Papapetropoulous' action was dismissed pursuant to Fed.R. Civ.P. 12(b)(6) for failure to state a claim for relief.

compose herself, the arbitrator excused her from further cross-examination. *Id.* at 6.

On the second day of the hearing, counsel for Papapetropoulous moved to dismiss the arbitration proceeding alleging a lack of opportunity to complete his cross-examination of the complaining witness. The arbitrator noted that "[i]f the testimony of the complaining witness were the sole evidence adduced at hearing by the Company to prove its assertions against grievant, in the absence of full and complete cross-examination, the undersigned would strike the testimony of complaining witness and dismiss the grievance." *Id.* at 6. However, the arbitrator found that the young woman's story was corroborated by Kathleen Golden, the psychiatric social worker with the CATC, who treated the young woman two to three times per week from May, 1982 through March, 1983 at the CATC facility. Golden testified that within one hour of the alleged sexual assault, the young woman related the story of the sexual assault to her. *Id.* at 7. The arbitrator admitted Golden's testimony under the excited utterance exception to the hearsay rule, Wis.Stat. 908.03, and concluded that since the woman described the events to Golden within one hour of the event, "there was no time for the complaining witness to fabricate the event...." *Id.* The arbitrator also noted that Ms. Golden had testified that she was unaware of the victim ever having fabricated a story and further that the victim had a reputation for truthfulness. The arbitrator further stated Golden testified that after the incident the woman became depressed and withdrawn, that she had difficulty sleeping because of nightmares, and that she had missed approximately five weeks of school since "one of the things that she was concerned about in returning to school was how to get there, was she going to take a bus or was she going to walk, was she going to get back on the bus. How was she going to handle that." *Id.* at 8 (quoting testimony Golden).

Because of the closeness in the proximity of time between the alleged attack and the woman's detailed description of the attack to Golden, the woman's reputation for truthfulness and the distinct alteration of her behavior pattern after the incident, the arbitrator concluded that the young woman's story concerning the attack was credible. Thus the arbitrator concluded that "the evidence discussed above clearly establishes the truth of the charges filed against the grievant and the grievance [against MTS] will be dismissed." *Id.* at 8–9.

On October 1, 1984, Papapetropoulous filed this action against Milwaukee Transport Services under 42 U.S.C. § 1983 alleging in paragraph 16 of his complaint that he was denied due process of law when he was terminated since:

"a. [He] was denied the right to cross-examine the complaining witness;

b. The arbitrator's decision was based solely upon the uncorroborated hearsay testimony of the complaining witness' social worker whose testimony related only what the complaining witness had told to her;

c. The arbitrator applied the wrong burden of proof and sustained the discharge for illegal conduct on a mere preponderance of the evidence."

Papapetropoulous requested that he be given another hearing in order to fully cross-examine the complaining witness or in lieu thereof be reinstated to his prior position as a bus driver with backpay, benefits and compensatory damages in the amount of $25,000.

Milwaukee Transport Services moved to dismiss the complaint before the district court, pursuant to Fed.R.Civ.P. 12(b)(6)[3] for failure to state a claim upon which relief could be granted, arguing that there was no state action involved as it is a private entity, that the complaint was identical to an action filed by Papapetropoulous

---

**3.** Federal Rule of Civil Procedure 12(b)(6) provides "[e]very defense, law or fact, to a claim for relief in any pleading ... shall be asserted in the responsive pleading thereto if one is re-

quired, except that the following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted...."

in state court, later removed to federal court and subsequently dismissed by Senior District Judge Gordon of the Eastern District of Wisconsin,[4] and that in reality the action was an attempt to vacate the arbitrator's award and was thus barred by the three month statute of limitations contained in 9 U.S.C. § 12 and Wis.Stat. § 788.13.

The district court initially granted MTS's motion to dismiss on the grounds that Papapetropoulous had not met the requirements of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), as he failed to allege that he was without an adequate state remedy to compensate him for his loss. Papapetropoulous filed a motion with the court requesting that he be allowed to amend his complaint, or in the alternative, that the court clarify its order. In response, the court ordered the parties to file additional briefs addressing the issue of whether Papapetropoulous had an adequate state remedy. After the briefs were filed, the district court expanded the findings of its original order dismissing Papapetropoulous' section 1983 complaint, finding that Papapetropoulous could have brought an action in state court for wrongful discharge alleging that the union violated its duty of fair representation in failing to appeal the arbitration award under § 301 of the NLRA, 29 U.S.C. § 185(a). The court concluded that since Papapetropoulous had an adequate remedy under 29 U.S.C. § 185(a) to challenge the arbitration decision, he was not denied due process.[5] The district court also found that the complaint was in effect an action to vacate an arbitration award and therefore was barred by the three month statute of limitations contained in 9 U.S.C. § 12 and Wis.Stat.

§ 788.13. Finally, the court also noted that, in any event, the arbitration hearing satisfied the requirements of due process.

The issue on appeal is whether the district court erred in dismissing Papapetropoulous' section 1983 action under Fed.R. Civ.P. 12(b)(6) for failure to state a claim upon which relief could be granted.

## II

### *Standard of Review*

A dismissal under Fed.R.Civ.P. 12(b)(6) for failure to state a claim is improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir.1985) (quoting *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Nonetheless, a complaint "must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory." *Carl Sandburg Village Condominium Association No. 1 v. First Condominium Development Company*, 758 F.2d 203, 207 (7th Cir.1985); *Car Carriers, Inc. v. Ford Motor Company*, 745 F.2d 1101, 1106 (7th Cir.1984), *cert. denied*, — U.S. ——, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985). Further, in considering whether the complaint states a cause of action we must also consider the arbitrator's decision attached to the complaint since "[a] copy of any written instruments which is an exhibit to a pleading is part thereof for all purposes." Fed.R. Civ.P. 10(c).

In a section 1983 action "the initial inquiry must focus on whether the two essential elements to a § 1983 action are

---

**4.** The record does not contain a copy of the complaint filed with Judge Gordon. According to the MTS brief, Papapetropoulous filed a complaint against MTS and Milwaukee County alleging that he had been terminated from his job without due process of law. MTS brief at 6. Judge Gordon construed this complaint as an attempt to overturn the arbitrator's award and dismissed it without prejudice granting Papapetropoulous leave to refile his complaint alleging a contract violation.

**5.** The district court was unsure of whether a claim brought by Papapetropoulous under 29 U.S.C. § 185(a) would be now barred by the statute of limitations. The court did not believe that this was a relevant concern, ruling that the question "is not whether a state remedy is now available to the plaintiff, but whether one was available 'at the time of the loss ... in question ...' *Parratt*, 451 U.S. at 543 [101 S.Ct. at 1917]."

present: (1) whether the conduct complained was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981).[6] Milwaukee Transport Services asserts that the first element of a section 1983 claim is not present in this case since there was no state action involved as Milwaukee Transport Services is a private company operating the bus system in Milwaukee County and thus the County was not involved in the decision to terminate Papapetropoulous. Milwaukee Transport Services further asserts that the plaintiff's complaint is in reality an action to overturn the arbitration award under 9 U.S.C. § 10 and is barred by the three month statute of limitations contained in 9 U.S.C. § 12. MTS also argues that the second element of a section 1983 action is not present since Papapetropoulous could have brought an action under § 301 of the NLRA in state court alleging that the union breached its duty of fair representation in failing to appeal the arbitration award, and thus under *Parratt v. Taylor, supra,* he was not denied due process since he had a remedy available at the time of the arbitrator's decision to overturn the arbitrator's award. Milwaukee Transport Services also argues that, in any event, the arbitration hearing satisfied the requirements of due process. We will consider these arguments pursuant to the analysis set forth in *Parratt v. Taylor, supra.*

### The Proper Party

■ In order to properly plead a section 1983 violation, the plaintiff must allege in his argument that "the conduct complained of was committed by a person acting under color of state law." *Parratt,* 451 U.S. at 535, 101 S.Ct. at 1913. This standard recited in *Parratt* reflects the express language of section 1983 which imposes liability upon "[e]very person who, under color of any statute *subjects, or causes to be subjected,* any citizen ... to the deprivation of any rights, privileges or immunities secured by the Constitution and laws...." 42 U.S.C. § 1983 (emphasis added). Section 1983 embodies the basic principles of tort law. *See Garza v. Henderson,* 779 F.2d 390 (7th Cir.1985); *Benson v. Cady,* 761 F.2d 335, 339 (7th Cir.1985). One of the elements of this constitutional tort cause of action is that a causal connection must exist between the defendant's actions and the injury resulting from the constitutional violation. *Benson,* 761 F.2d at 339. "Section 1983 creates a cause of action based upon personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Wolf-Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir.1983). *See also Crowder v. Lash,* 687 F.2d 996, 1005 (7th Cir.1982).

■ As previously noted, in paragraph 16 of his complaint, Papapetropoulous alleges that he was denied due process when the arbitrator denied him the right to thoroughly cross-examine the complaining witness, based his decision to allow Milwaukee Transport Services to terminate him on the uncorroborated hearsay testimony of the complaining witness' social worker, and applied the wrong burden of proof in upholding his discharge. Papapetropoulous does not allege that his firing by the MTS in and of itself violated any constitutional right rather he alleges a procedural denial of due process in that he was not allowed to complete his cross-examination of the young woman victim and further the arbitrator

---

**6.** Recently, in *Daniels v. Williams,* — U.S. —, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), the Supreme Court decided that an allegation of mere negligence against the defendant is insufficient to state a claim under section 1983 for a violation of the Fourteenth Amendment; the court thus overruled that portion of *Parratt v. Taylor, supra,* holding that a Fourteenth Amendment claim based on negligence states a claim for relief under section 1983. *Id.* at 665. The Court did not change that portion of *Parratt* setting forth the two-part analysis for reviewing a claimed Fourteenth Amendment violation and thus this portion of the *Parratt* decision is still valid.

based his decision to uphold the termination solely on the hearsay testimony of the woman's counselor at the CATC. An allegation that a person is deprived of his property right in his job alone is insufficient to establish that the plaintiff's rights have been violated, rather it is the deprivation of his property interest without due process of law that establishes a sufficient allegation that his constitutional rights have been violated. As we recently noted in *Parrett v. City of Connersville, Inc.*, 737 F.2d 690 (7th Cir.1984), "a deprivation is permitted by the due process clause provided there is no denial of due process." *Id.* at 697.

■ The arbitrator's decision attached to Papapetropoulous' complaint clearly delineates that the arbitrator was appointed by the Federal Mediation and Conciliation Service. Thus a completely independent third party arbitrator made the decision at the hearing that Papapetropoulous now complains of—specifically, he alleges he was denied the right to cross-examine the witness, the arbitrator's decision was based on hearsay and the arbitrator applied the wrong burden of proof in rendering his decision. We note that MTS complied with its obligation to the union under the collective bargaining agreement when it submitted this dispute to an independent arbitrator for resolution pursuant to Article VI of the collective bargaining agreement. The independent federal arbitrator, and not the Milwaukee Transport Services Company, made those decisions that allegedly deprived Papapetropoulous of his due process rights at the hearing, and thus we are at a loss to understand how the plaintiff can argue that MTS is the party responsible in a section 1983 action for the decisions of the independent arbitrator.

We agree with the district court that the plaintiff has drafted his claim as a § 1983 action against his former employer, but that his complaint actually alleges that the procedures used by the independent arbitrator denied him due process and that any challenge to the arbitrator's decision is governed by 9 U.S.C. § 10(c) that provides the authority for vacating the arbitrator's award.[7] The court properly concluded that an action to overturn an arbitrator's award under this statute must be filed within three months of the date of arbitrator's decision pursuant to 9 U.S.C. § 12 and that Papapetropoulous failed to comply with this statute of limitation as he filed this action on October 1, 1984, more than three months after the arbitrator rendered his decision on January 10, 1984.[8]

7. Title 9 U.S.C. § 10(c) provides:
   "In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

   \*   \*   \*   \*   \*   \*

   (c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced."

8. The district court noted that since the plaintiff failed to file his complaint within the three month statute of limitations time period for vacating an arbitration award, it need not decide whether the plaintiff was the proper party to file a claim under 9 U.S.C. § 10. Plaintiff argues on appeal that only the union could have brought an action to vacate the arbitration award under 9 U.S.C. § 10(c) and thus he was without standing to seek such relief. Papapetro-

poulous has failed to cite any case law or authority to support his assertion that he was without standing to bring an action to vacate an arbitration award under 9 U.S.C. § 10, nor could we find any federal cases on the issue of whether an employee represented by a union has standing to bring an action under this statute to vacate an arbitrator's decision. We need not decide this issue at this time as it is clear that regardless of whether Papapetropoulous has standing to assert such a claim, his complaint clearly alleges a violation of 9 U.S.C. § 10(c) and that this complaint is barred as he failed to file it within the three month statute of limitation time period contained in 9 U.S.C. § 12. We do note that several decisions from state courts have stated a party may challenge an arbitration award if he is a party to the arbitration hearing and his rights are affected by the arbitrator's decision. *See Clark v. Courter*, 117 N.E. 720, 280 Ill. 590, 606 (1917); *Simmons v. Simmons*, 100 S.E. 743, 85 W.Va. 25 (1919). *See also Andrus v. Convoy Co.*, 480 F.2d 604 (9th Cir.1973) (noting that an employee normally cannot attack a final arbitration

Papapetropoulous argues that the Supreme Court has expressly allowed a plaintiff "to obtain relief requested by [him] [in a section 1983 action] ... after having lost his claim for the same relief in an arbitration proceeding." Papapetroupoulous' brief at 12 (citing *McDonald v. City of West Branch*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984); *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974)). Each of the cases cited by the appellant are distinguishable from the facts before this court as the plaintiffs in those cases had a viable cause of action against their employer for conduct independent of the arbitrator's arbitration proceeding. Further, these decisions did not involve a section 1983 claim based upon alleged infirmities in the arbitration proceeding itself. For example, in *McDonald*, the arbitrator concluded that there was just cause for the plaintiff's dismissal. The plaintiff subsequently brought a section 1983 action alleging that his employer had discharged him for exercising his "First Amendment right of freedom of speech, freedom of association and freedom to petition the government for redress of grievances." *McDonald*, 466 U.S. at 286, 104 S.Ct. at 1801. The Supreme Court held, in part, that the arbitrator's decision did not bar the plaintiff's claim since the plaintiff's complaint alleged that his employer's actions, independent of the terms of the collective bargaining agreement, violated the federal Constitution. *Id.* at 1803. The theory of *McDonald* and the other cases cited by Papapetropoulous is that " 'in instituting an action under [the statutes], the employee is not seeking review of the arbitrator's decision. Rather, he is asserting a statutory right independent of the arbitration process.' " *McNair v. United States Postal Service*, 768 F.2d 730 (5th Cir.1985) (quoting *Gardner-Denver Co.*, 415 U.S. 36, 54, 94 S.Ct. 1011, 1022, 39 L.Ed.2d 147 (1974)). In the action before us Papapetropoulous has failed to assert any independent statutory right independent of the arbitration process; rather, he seeks nothing but a review of the arbitrator's decision under the guise of a section 1983 action.[9]

### Alleged Constitutional Violation

Even if the plaintiffs' complaint asserted a claim against a proper party, the complaint and the arbitrator's decision attached to the complaint reveal that the plaintiff has failed to allege a constitutional violation. In order to properly plead a section 1983 violation the plaintiff must also allege that he was deprived of a right "secured by the Constitution...." As previously noted, Papapetropoulous alleged in his complaint that he was deprived of his property interest in his job without due process of law when the arbitrator denied him the right to a thorough cross-examination of the complaining witness, when he based his decision upon the uncorroborated hearsay

award " 'except on the grounds of fraud, deceit or breach of the duty of fair representation, *or* unless the grievance procedure was a sham, substantially inadequate or substantially unavailable' " *Id.*, 280 Ill. at 606, 171 N.E. 720 (citations omitted) (emphasis added).

**9.** MTS also argues that the element of "state action" is also missing in this case as Milwaukee County was not involved in any manner in or "responsible" for the termination of Papapetropoulous from his job as bus driver. *See Blum v. Yaretski*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982); *Rendell-Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). We need not address MTS' argument that a state action does not exist in this case as we have held that Papapetropoulous'

complaint does not state a claim under 42 U.S.C. § 1983. Further, under the facts of this case, MTS' argument is premature as the plaintiff alleges in his complaint that "Defendant Milwaukee Transport Services, Inc., hereinafter MTS, is a Wisconsin, corporation, *wholly-owned* by Milwaukee County...." (emphasis added). When reviewing the sufficiency of a complaint pursuant to Fed.R.Civ.P. 12(b)(6) we are to consider the allegations in the complaint as true in determining whether the complaint states a claim. *See, e.g., B. Doe, M.D. v. St. Joseph's Hospital of Fort Wayne*, 788 F.2d 411, 414 (1986); *Ramirez DeArellando v. Weinberger*, 745 F.2d 1500, 1506 (D.C.Cir.1984). The allegation that Milwaukee Transport Services is "wholly-owned" by Milwaukee County is, at this point in the proceedings, sufficient to establish the requisite state action.

testimony of the complaining witness' social worker and when he applied an incorrect burden of proof in rendering his decision upholding the dismissal of Papapetropoulous.

Due process is a flexible concept that requires "some form of hearing.... 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). In *Mathews* the Supreme Court identified three factors that generally should be considered in determining whether the requirements of due process are satisfied:

> "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved in the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Id.* at 335.

■ Applying the factors elicited in *Mathews* to the facts in this case, the first factor cited in *Mathews* clearly favors the plaintiff as he has a substantial interest in retaining his job. The second factor weighs in Milwaukee Transport's favor as the risk of an erroneous deprivation through the procedures used in terminating Papapetropoulous was minimal at best. Although the precise scope of the protections in the context of public employment is "far from clear," at a minimum they include "prior notice of the discharge, and the reasons for it, and a meaningful opportunity to respond prior to termination." *Schultz v. Baumgart*, 738 F.2d 236, 237 (7th Cir.1984). *See Rodgers v. Norfolk*

*School Bd.*, 755 F.2d 59, 63 (7th Cir.1985).[10] In this case, Papapetropoulous was fully informed of the charges against him, he knew the identity of the victim and he had an opportunity to gather evidence in his behalf prior to the arbitration proceeding. Further, at that hearing he had an opportunity to testify before an independent arbitrator, conduct a limited cross-examination of the young woman and a complete cross-examination of the social worker. Finally, he was represented by his own counsel as well as the union's counsel during the hearing.

Papapetropoulous complains that he was denied procedural due process when the young woman was excused from testifying further after she broke down, continued to cry and was unable to compose herself to a degree tht would allow him to complete his cross-examination. As established in this court's recent decision in *Green v. Bd. of Sch. Com'rs. of City of Indianapolis*, 716 F.2d 1191 (7th Cir.1983), the mere fact that Papapetropoulous was denied an opportunity to fully cross-examine the complaining witness does not in and of itself establish that this hearing did not comport with the requirements of due process. In *Green*, a school bus driver, was discharged for "'suggestive, lude, and/or sexual advances, both verbal and physical, to female pupil passengers on [his] bus....'" *Id.* at 1192. The school board held a hearing to give the plaintiff an opportunity to contest these charges and thereafter dismissed him. The charges were based upon "the handwritten statements of ten different children who regularly rode" the plaintiff's bus. *Id.* at 1193. Green was permitted to see the children's statements, but the identities of the children were not disclosed and they did not testify at the hearing. The plaintiff filed a claim against the school board alleging that he was denied due process since he was not afforded the opportu-

---

**10.** In this case, Papapetropoulous does not complain that he did not have a meaningful opportunity to respond prior to his termination and the record, as developed to this point in the case, does not contain any information concerning whether Papapetropoulous was afforded an opportunity to respond prior to his termination. Since he only challenges the procedures used at the arbitration hearing itself, we confine our analysis to a review of the adequacy of that hearing.

nity to confront the witnesses against him and to attack their credibility. In *Green*, we noted that the hearing comported with the requirements of due process as the board fully informed the plaintiff of the charges, and gave him the opportunity to establish that the charges were false. We stated that the Board's failure to allow Green to cross-examine the children did not deprive him of due process since the children's statements were sufficiently corroborated and thus their statements were deemed trustworthy. *Id.* at 1193 (noting, "[t]here is no chance all the children fabricated their stories because they disliked Green because each child gave her statement to a police investigator employed by the School Board and was interviewed individually to avoid the risk of collusion. Also each recorded her story in her own words.... and each child's statement was signed by one of her parents who reviewed it in the presence of the child and the investigator.").

In *Rodgers v. Norfolk School Bd.*, *supra*, a case similar to *Green* since it also involved a challenge by a former female employee to the adequacy of her termination hearing, a bus driver had been fired based upon the complaint of three children who told the driver's supervisor that the driver and her bus aide had been involved in a knife fight on the bus. After she was suspended, the driver met with the Assistant Director of Personnel and Assistant Superintendent, who reviewed the supervisor's account of the incident and the employee's response. In upholding the dismissal, the Fourth Circuit concluded that due process was satisfied under the facts of that case:

"[w]e hold that due process required only that Rodgers be given notice of the charges against her, including a general summary of the evidence available to support the charges, reasonable time to marshal facts and evidence to meet the charges, and an opportunity to be heard in a meaningful manner in rebuttal, avoidance, or justification of the conduct charged."

755 F.2d at 64. The bus driver argued that additional procedural safeguards were required in the form of confrontation and cross-examination of the children. The Fourth Circuit disagreed stating that the driver "not only had the accusations explained to her, she also was informed of her accusers' identities. She therefore had a fair opportunity to account for any particular animosities her now-known accusers may have had toward her that would have led them to make unfounded accusations against her, but she failed to do in any convincing manner." *Id.* at 63. The court concluded that the right to cross-examine was not absolute and the fear of the young children in testifying could "negate the right to confrontation that in other contexts not similarly fraught with countervailing risks to child-accusers and not protected by adequate alternative procedures may well be considered so fundamental as to be an essential element of procedural due process." *Id.* at 64. Both *Green* and *Rodgers* stand for the proposition that when the circumstances demonstrate the procedures used during the hearing adequately protect the plaintiff's rights, due process in the context of an arbitration hearing does not automatically require that the plaintiff be afforded the right to examine his accuser.[11]

**11.** We note that courts have allowed the admission of statements of child witnesses, absent cross-examination, in criminal trials identifying the defendant as the perpetrator of criminal activity where the state demonstrates that the statement is trustworthy. *See, e.g., United States v. Cree,* 778 F.2d 474, 477 (8th Cir.1985) (hearsay rule 803(24) satisfied and thus child's statement was admissible); *Gross v. Greer,* 773 F.2d 116, 119–20 (7th Cir.1985); *State v. Gollon,* 115 Wis.2d 592, 340 N.W.2d 912, 915 (Wis. App.1983). A further question arises in criminal cases as to the defendant's Sixth Amendment right of confrontation; however, this question is not present in this case as the witness testified at an arbitration hearing. Yet even in a criminal trial setting, courts have increasingly recognized the competing concern of the child's welfare in being forced to testify, and have suggested various methods such as videotapes or depositions to minimize the trauma to the child. *See, e.g., State v. Gilbert,* 109 Wis.2d 501, 326 N.W.2d 744, 751–52, n. 24 (1982).

In our case, the arbitrator specifically stated that he did not rely solely on the witness' story elicited on direct examination since "[i]f the testimony of the complaining witness were the sole evidence adduced at hearing by the Company to prove its assertions against grievant, in the absence of full and complete cross-examination, the undersigned would strike the testimony of complaining witness and dismiss the grievance." The arbitrator noted that the young woman's story was corroborated by Golden, a Psychiatric Social Worker at the CATC facility, who testified that approximately one hour after the attack the young woman came to her and told her of the attack. Papapetropoulous complains that Golden's testimony was merely uncorroborated hearsay and thus suggests that her testimony was untrustworthy as it was based solely on the report of the young woman. The arbitrator ruled that her testimony was admissible under the excited utterance exception to the hearsay rule, Wis.Stat. § 908.03(2).[12] Further, Golden testified that the woman had a reputation for truthfulness, she observed that the young woman had an abrupt change in her emotional condition after the attack. Finally, the arbitrator indicated that he relied on the sheriff's department report of the sexual assault allegation.[13] Given the very limited period of time (one hour) between the attack and the victim's report to Golden concerning the attack, the young woman's reputation for truthfulness, the woman's

psychological reaction as evidenced by her nightmares and withdrawal from school for five weeks after the incident, and the information contained in the independent Sheriff's report, the arbitrator decided that the young woman's allegation that she was attacked by Papapetropoulous was credible. Thus the arbitrator reviewed evidence independent of the young woman's allegations to determine that her allegations were credible.

The third factor in *Mathews* "looks to the government's interest, including the burden on the government of any additional procedures." *Rodgers*, 755 F.2d at 64. As we previously held, Papapetropoulous was afforded a complete hearing before an independent arbitrator to assess the charges made against him and the arbitrator's decision to dismiss the young woman from further cross-examination did not violate due process as the arbitrator relied on independent evidence to establish the young woman's credibility. Since Papapetropoulous was provided with notice of the hearing, allowed to marshal evidence in his behalf and present it to an independent arbitrator, and the arbitrator considered this evidence along with independent evidence as to the credibility of the woman's story of the attack, we hold that the procedures followed by the arbitrator in conducting the hearing were constitutionally adequate under the facts of this case and that

**12.** 12 Wis.Stat. § 908.03(2) provides that a statement is an exception to the hearsay rule if it relates "to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Under Wisconsin law, the declarant's statement does have to be made contemporaneously with the event that caused the excited state of the declarant in order to be admitted in evidence. *State v. Padilla*, 110 Wis.2d 414, 421, 329 N.W.2d 263, 267 (Ct.App.1982); *see State v. Schmidt*, 69 Wis.2d 668, 684, 230 N.W.2d 890, 899 (1975) (probation officer's testimony as to what boy told him fifteen days after boy was assaulted were admissible under excited utterance exception.) We are aware that an arbitration hearing is not governed by the Rules of Evidence. *Shearson Hayden Stone, Inc. v. Liang*, 653 F.2d 310, 311 (7th Cir.1981). The fact that the arbi-

trator relied on this exception to the hearsay rule establishes that the arbitrator did not rely exclusively on the young woman's testimony in assessing the validity of her allegations.

**13.** In framing the issue to be decided at the hearing the arbitrator noted: "The question before the arbitrator then is one of credibility. Did the events of March 9, 1983, occur as described in the complaining witness's testimony at the hearing; *and as contained in the Milwaukee County Sheriff's Department Offense Report filed by Officer James Fuerst*, (Company Exhibit No. 2); and as set forth in the statement of Ms. Kathleen Golden of March 24, 1983 (Company Exhibit No. 1), as well as the testimony of Ms. Golden at the hearing?" Arbitrator's decision at 5 (emphasis added).

no additional procedural protections are required.[14]

Papapetropoulous also contends that since he was charged with engaging in criminal activity in sexually assaulting the young woman, the Milwaukee Transport Services must establish this charge by clear and convincing evidence. He argues that the arbitrator applied an incorrect burden of proof when it upheld the dismissal based upon a preponderance of the evidence. From our review of the arbitrator's decision, we do not agree that the arbitrator applied the preponderance of the evidence burden of proof standard. Rather, on page 9 of his opinion the arbitrator states "it is the opinion of the undersigned that the evidence 'clearly establishes the truth of the charges filed against grievant....'" Since the arbitrator's decision demonstrates he applied a higher burden of proof than the preponderance of the evidence standard, we do not have to determine if due process requires a higher burden of proof when an employee is alleged to have engaged in criminal conduct.[15]

The decision of the district court is AFFIRMED.

---

**14.** Since we have held that the arbitrator's hearing satisfied the requirements of due process, we need not decide whether Papapetropoulous had an adequate state remedy available to him under state law to challenge the validity of the arbitrator's decision. We do note, however, that Milwaukee Transport Services presents a persuasive argument that an adequate state remedy was available. MTS correctly notes that a person is not deprived of a property interest without due process if he or she has an adequate state remedy. *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). In this case, the plaintiff could have brought an action in state court against MTS for breach of contract and the union for breach of its duty of fair representation in failing to appeal the arbitrator's award. *See Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 565, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); *William E. Arnold Co. v. Computers District Council of Jacksonville,* 417 U.S. 12, 16, 94 S.Ct. 2069, 2072, 40 L.Ed.2d 620 (1974) (an action based on 29 U.S.C. § 185 alleging breach of union's duty of fair representation may be brought in state court). Papapetropoulous argues that such an action is not an adequate remedy to review the arbitrator's decision since he must demonstrate that the union engaged in intentional misconduct or "bad faith" in failing to appeal the arbitrator's decision. *Camacho v. Ritz-Carlton Water Tower,* 786 F.2d 242, 246 (7th Cir.1986). While proving intentional misconduct on the part of the union is a difficult burden, *see id.,* we note that the state court would have to consider the fairness of the arbitrator's decision to determine whether the union acted in bad faith in failing to appeal. Thus, Papapetropoulous would have received an opportunity for review of the alleged procedural inadequacies in the arbitration hearing in the state court proceeding.

**15.** We note that Papapetropoulous is not clear in what higher standard of proof he is advocating. However, the higher standard of proof advocated by Papapetropoulous may not be appropriate since an arbitration proceeding is in the nature of an administrative proceeding and is not a criminal proceeding. *See McNair,* 768 F.2d at 733 (noting that while arbitrator applied burden of proof mandated for criminal cases, he was not required to do so since "the issue was simply whether, under the terms of the collective bargaining agreement, USPS [the employer] had just cause ... to terminate his employment.") It seems to us that if an employee could be fired based upon a preponderance of the evidence that his work is unsatisfactory or that he was chronically late for work, he should be able to be fired for illegal conduct based upon the same standard of proof. It is up to the parties negotiating the collective bargaining agreement or the arbitrator interpreting that agreement to establish the burden of proof in determining when an employee may be terminated for violating a particular work rule. *See General Drivers, Etc. v. Sears, Roebuck & Co.,* 535 F.2d 1072, 1076 (8th Cir.1976).