**Darrell D. McNAIR, Plaintiff-Appellant,**

v.

**UNITED STATES POSTAL SERVICE, Defendant-Appellee.**

No. 84–2499.

United States Court of Appeals, Fifth Circuit.

Aug. 19, 1985.

Hill, Ghiselli & Moser, Bertrand C. Moser, Houston, Tex., for plaintiff-appellant.

Henry K. Oncken, U.S. Atty., James R. Gough, Asst. U.S. Atty., Houston, Tex., John C. Oldenburg, Senior Asst. Reg. Labor Counsel, Office of Labor Law, U.S. Postal Service, Memphis, Tenn., Kevin B. Rachel, Stephen E. Alpern, Office of Labor Law, U.S. Postal Service, Washington, D.C., for defendant-appellee.

Before CLARK, Chief Judge, RANDALL and JONES, Circuit Judges.

PER CURIAM:

Darrell McNair, a former postal worker, alleges that the United States Postal Service wrongfully terminated his employment in violation of the terms of its collective bargaining agreement with McNair's union, the National Association of Letter Carriers. He filed this suit, notwithstanding an arbitrator's decision that his employment had been terminated for just cause, seeking reinstatement and backpay from the date of termination. We hold that McNair lacks standing to attack the arbi-

trator's decision and that, although the district court should not have granted summary judgment, the case was properly dismissed. We remand the case to the district court for the entry of a new judgment reflecting the true ground for dismissal.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

In 1981, Darrell McNair (McNair) was a letter carrier at the United States Post Office in LaPorte, Texas. He was also a member of the National Association of Letter Carriers, AFL–CIO (NALC), which is the exclusive bargaining agent for letter carriers at LaPorte and around the country. A collective bargaining agreement between NALC and McNair's employer, the United States Postal Service (USPS), governed the terms and conditions of his employment. McNair is not himself a party to the agreement.

On December 11, 1981, postal inspectors arrested McNair for allegedly stealing from the mail a radio that had, as part of an undercover investigation, been placed among the material entrusted to him for delivery. It is undisputed that the inspectors discovered the radio in the bedroom of McNair's home. The parties disagree sharply, however, on how it got there. The inspectors' version of the story can be summarized as follows. In response to an anonymous tip that McNair had been stealing mail, they placed an electronic beeper inside a package containing a radio and mailed the package to a nonexistent address on McNair's assigned route. The package was given to McNair for delivery on December 11, 1981. The inspectors, by monitoring the beeper, determined that McNair kept the package with him throughout the workday and returned with

it to the post office after completing his route. They then saw McNair carrying the package from the post office to his car and, through further monitoring of the beeper, determined that he brought it to his home. After the beeper's alarm sounded, indicating that the package had been opened, the inspectors knocked on McNair's door and secured his home. Several hours later, they obtained a search warrant and discovered the radio in McNair's bedroom.

McNair agrees with this account until the point at which, according to the inspectors, he left the post office with the package containing the radio. McNair maintains that, having determined that the package was undeliverable, he simply left it at the post office before going home for the day. According to McNair, the package that he was observed carrying from the post office to his car was a box of cookies that had been given to him that day by a postal customer that lives along his route. He maintains, moreover, that, during the interim between his initial confrontation with the postal inspectors and the search of his home, someone planted the radio in his bedroom.

Based upon his alleged possession of the radio, McNair's superintendent formally charged him with "mistreatment of mail matter"[1] and notified him of USPS' intention to terminate his employment. The charge specifically informed McNair of his right to contest the superintendent's allegations and to appeal an adverse decision through the grievance process of the collective bargaining agreement. McNair's employment was formally terminated on January 8, 1982.

On January 11, 1982, a federal grand jury indicted McNair for stealing the radio, in violation of 18 U.S.C. § 1709,[2] and for

1. The charge read in pertinent part:
   You are charged with *mistreatment of mail matter.*
   On December 11, 1981, a parcel addressed to Mr. C.O. Havens, 9109 Barry Brook, LaPorte, Texas, bearing a return address of Radio Shack was assigned for delivery on your route No. 8. On December 12, 1981, at approximately 1330 hours, a search warrant was served on you at your residence by Postal

   Inspector C.O. Havens. During search of your home, the contents of the above indicated parcel, (a Panasonic AM–FM radio) was found in the rear bedroom.

2. 18 U.S.C. § 1709 provides:
   Whoever, being a Postal Service officer or employee, embezzles any letter, postal card, package, bag, or mail, or any article or thing contained therein entrusted to him or which

"knowingly and willfully obstruct[ing] and retard[ing] the passage" of the radio through the mail, in violation of 18 U.S.C. § 1701.[3] A jury acquitted McNair of all charges. Following the acquittal, McNair sought reinstatement to his former job, but USPS refused to rehire him. NALC filed a grievance on McNair's behalf which, under the terms of the collective bargaining agreement, culminated in submission to an arbitrator of the question whether USPS had "just cause" to terminate McNair's employment.[4] The union represented McNair before the arbitrator, and the adequacy of that representation has not been challenged. On December 15, 1982, following a hearing and the submission of briefs, the arbitrator determined that USPS had just cause for its actions and, indeed, that there is "not ... a single reasonable doubt as to the guilt of the grievant." Although the arbitrator consciously applied the burden of proof mandated in criminal cases, the specific issue before the arbitrator, of course, was not whether McNair is guilty of a criminal offense. Rather, the issue was simply whether, under the terms of the collective bargaining agreement, USPS had just cause, because McNair had allegedly mistreated mail matter, to terminate his employment.

On March 14, 1983, McNair, claiming jurisdiction under 39 U.S.C. § 409,[5] filed this lawsuit against USPS. The complaint seeks a judgment vacating the arbitration decision and ordering USPS to reinstate McNair to his former position, with full backpay from the date of termination. The complaint alleges that McNair's constitutional rights have been violated. The complaint does not specifically allege, however, that McNair's termination violated the Constitution. Rather, the complaint alleges that, because the arbitrator resolved against McNair the same issue—whether on December 11, 1981, he stole a radio from the mail—that the criminal jury resolved in his favor, the arbitration hearing did not afford him due process, in violation of the fifth amendment.

USPS filed a motion to dismiss the complaint or, alternatively, for summary judgment on the following grounds: (1) the district court, because of a defect in service of process, lacked personal jurisdiction over USPS; (2) McNair, because he was not a party to the collective bargaining agreement or to the arbitration itself, lacked standing to vacate the arbitrator's decision; and (3) the court, assuming *arguendo* that McNair has standing, must defer to the arbitrator's decision because, even if it is erroneous, it is neither violative of public policy nor in manifest disregard of the law. McNair filed a cross-motion for summary judgment. On August 13, 1984, the district court, without assigning reasons, granted USPS' motion for summary judgment and

comes into his possession intended to be conveyed by mail, or carried or delivered by any carrier, messenger, agent, or other person employed in any department of the Postal Service, or forwarded through or delivered from any post office or station thereof established by authority of the Postmaster General or of the Postal Service; or steals, abstracts, or removes from any such letter, package, bag or mail, any article or thing contained therein, shall be fined not more than $2,000 or imprisoned not more than five years, or both.

**3.** 18 U.S.C. § 1701 provides:

Whoever knowingly and willfully obstructs or retards the passage of the mail, or any carrier or conveyance carrying the mail, shall be fined not more than $100 or imprisoned not more than six months, or both.

**4.** Article 16, Section 1 of the collective bargaining agreement provides:

In the administration of this Article, a basic principle shall be that discipline should be corrective in nature, rather than punitive. No employee may be disciplined or discharged except for just cause such as, but not limited to, insubordination, pilferage, intoxication (drugs or alcohol), incompetence, failure to perform work as requested, violation of the terms of this Agreement, or failure to observe safety rules and regulations. Any such discipline or discharge shall be subject to the grievance-arbitration procedure provided for in this Agreement, which could result in reinstatement and restitution, including backpay.

**5.** 39 U.S.C. § 409(a) provides in pertinent part:

(a) Except as provided in section 3628 of this title, the United States district courts shall have original but not exclusive jurisdiction over all actions brought by or against the Postal Service.

denied McNair's motion. McNair filed a timely appeal.

## II. CONTENTIONS ON APPEAL.

All parties agree that, under normal circumstances, NALC and USPS would be the only parties with standing to attack the arbitrator's decision and that the scope of judicial review would be quite narrow. McNair argues, however, that this case presents special circumstances. He reports that his "entire argument derives from one fundamental premise—the jury in the criminal trial determined that Mr. McNair did not steal the radio." Appellant's Brief at 23. He proceeds from that premise to the ultimate conclusion that we should reverse the district court's judgment and direct the entry of judgment in his favor through a tortuous combination of concessions and distinctions. His argument, we think, goes like this. (1) An aggrieved employee normally lacks standing to attack in court a final decision from a mandatory, bargained-for grievance procedure which has been conducted on his behalf by the union. (2) This rule does not, however, preclude an employee from asserting certain independent causes of action against his employer, even though they arise from the same conduct that was the subject of a grievance. (3) The Supreme Court has held that causes of action for the violation of certain statutes that protect fundamental rights, including Title VII of the Civil Rights Act of 1964, the Fair Labor Standards Act, and 42 U.S.C. § 1983, are among the claims that, notwithstanding an unsuccessful grievance, may be independently asserted by an aggrieved employee. (4) A general claim that an arbitrator's decision has deprived an employee of constitutional rights, although it lacks a specific statutory base, it follows, must also be among those that may be independently asserted. (5) Adherence to the doctrine of collateral estoppel is required by the Constitution, *see Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). (6) Because an adverse grievance ruling does not preclude the assertion of constitutional claims, an arbitrator's decision that does not give collateral estoppel effect to the results of a criminal trial cannot stand and may be avoided by the employee, even though he is not a party to the collective bargaining agreement. (7) Collateral estoppel does not apply to fact questions that were not necessarily decided in the first proceeding or that are governed by a less stringent standard of proof in the second proceeding. (8) In McNair's case, the arbitrator could have upheld the discharge by deciding a narrower question than the criminal jury decided and could also have applied a less stringent burden of proof. (9) Nevertheless, the arbitrator in fact decided the precise question involved in the criminal trial and applied the same standard of proof applied by the jury; the arbitrator, therefore, was constitutionally forbidden from reaching a result contrary to the jury's decision. (10) Because the arbitrator reached a decision that directly contradicts the jury's decision, the arbitration is constitutionally infirm and should be vacated. From this latter proposition, McNair leaps to the conclusion that we should order USPS to reinstate him with backpay; he does not explain how an alleged defect in the arbitration process automatically renders the termination itself unlawful.

USPS attacks McNair's theory of the case at nearly every turn. USPS argues first that the allegation of a constitutional defect in the arbitration process does not change the rule that only the parties to the arbitration have standing to attack it in court. At any rate, USPS claims, the arbitrator did not violate McNair's constitutional rights because collateral estoppel is not in this context a constitutional doctrine. Finally, USPS maintains, collateral estoppel, even if it is a constitutional doctrine, does not apply on these facts because the arbitrator's decision does not necessarily conflict with the jury's. According to USPS, the jury could have found that McNair brought the radio into his home, but that he did not do so with the requisite criminal intent. The arbitrator, on the other hand, could have determined, without regard to McNair's state of mind, that the

mere possession of the radio constituted mistreatment of mail matter.

## III. DISCUSSION.

USPS is required by statute to recognize labor organizations that its employees have selected as their bargaining representatives, *see* 39 U.S.C. § 1203(a), and is authorized to execute collective bargaining agreements with those organizations that "include any procedures for resolution by the parties of grievances and adverse actions arising under the agreement, including procedures culminating in binding third-party arbitration," *see id.* § 1206(b). The relationship between USPS and its employees' bargaining representatives, moreover, is governed by the Labor Management Relations Act (LMRA), 29 U.S.C. §§ 141 *et seq.*, which is made applicable by the Postal Reorganization Act, 39 U.S.C. § 1209(a), (b). Under section 2 of the Postal Reorganization Act, federal courts have jurisdiction of disputes arising under collective bargaining agreements executed by USPS. *See id.* § 1208(b). That section is the "analogue" of section 301(a) of the LMRA, 29 U.S.C. § 185(a), *National Association of Letter Carriers v. United States Postal Service*, 590 F.2d 1171, 1174 (D.C.Cir.1978), and the decisions under section 301 governing an employee's right to vacate an adverse arbitration award are fully applicable here. *See Lawson v. Truck Drivers, Chauffeurs & Helpers*, 698 F.2d 250, 255–56 (6th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983). We turn to an application of that familiar body of law to the circumstances of this case.

McNair's theory of this case raises two fundamental questions to which there are clear answers: (1) who has standing to attack the results of a final, binding arbitration conducted under the terms of a collective bargaining agreement? and (2) under what circumstances may a court, at the request of such a party, overturn an arbitration award?

■■■ When a collective bargaining agreement establishes a mandatory, binding grievance procedure and gives the union the exclusive right to pursue claims on behalf of aggrieved employees,[6] the results obtained by the union are normally conclusive of the employees' rights under the agreement. *See, e.g., Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). This means, of course, that an aggrieved worker whose employment is governed by such an agreement normally lacks standing independently to initiate grievance procedures, to sue for breach of the collective bargaining agreement, or to attack in court the results of the grievance process. *See, e.g., Acuff v. United Papermakers and Paperworkers*, 404 F.2d 169, 171 (5th Cir.1968), *cert. denied,* 394 U.S. 987, 89 S.Ct. 1466, 22 L.Ed.2d 762 (1969). Moreover, when an arbitration decision is attacked by the union or the employer, the scope of judicial review is extremely limited. *See, e.g., HMC Management Corp. v. Carpenters District Council*, 759 F.2d 489 (5th Cir.1985) (Williams, J., dissenting from denial of en banc rehearing) (collecting cases).

■■■ These rules are not, however, without exception. It is established that, if the union has breached its duty of fair representation, by arbitrarily refusing to pursue a claim through the grievance process or by doing so in a perfunctory or otherwise inadequate manner, an aggrieved employee is not foreclosed by the results of the grievance process. He may sue his employer or his union or both but, in order to recover, he must prove that the union breached its duty of fair representation and that the employer breached the collective bargaining agreement. *See, e.g., Vaca*, 386 U.S. at 171, 87 S.Ct. at 903.

■■■ As noted, McNair readily acknowledges these rules. He has, moreover, expressly disavowed any claim that NALC breached its duty of fair representation in presenting his claim to the arbitrator. The

---

**6.** It is undisputed that the agreement between NALC and USPS so provides.

union is not a party to this suit. Instead, McNair attempts to create an additional and, in our view, unprecedented exception to the rule that an employee normally lacks standing to attack an arbitration decision that has resulted from a bargained-for grievance procedure. McNair relies on three Supreme Court cases: (1) *McDonald v. City of West Branch*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984); (2) *Barrentine v. Arkansas-Best Freight Systems, Inc.*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981); and (3) *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). These decisions recognize that a final arbitration decision, in the usual case, conclusively determines an employee's rights under a collective bargaining agreement. They also recognize, however, that an arbitrator's competence and authority are limited to the interpretation of the collective bargaining agreement and the application of "the law of the shop, not the law of the land." *Gardner-Denver*, 415 U.S. at 57, 94 S.Ct. at 1024. Accordingly, the cases hold that federal courts are not required to give preclusive effect to arbitration awards when an aggrieved employee asserts an independent cause of action, though it arises from the same conduct submitted to the grievance process, for violation of certain federal statutes. *See McDonald*, 104 S.Ct. at

1799 (42 U.S.C. § 1983); *Barrentine*, 450 U.S. at 728, 101 S.Ct. at 1437 (Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*); *Gardner-Denver*, 415 U.S. at 36, 94 S.Ct. at 1011 (Title VII, 42 U.S.C. §§ 2000e *et seq.*). The theory of these cases is that "in instituting an action under [the statutes], the employee is not seeking review of the arbitrator's decision. Rather, he is asserting a statutory right independent of the arbitration process." *Gardner-Denver*, 415 U.S. at 54, 94 S.Ct. at 1022. Moreover, the Court has concluded that "Congress intended the statutes at issue to be judicially enforceable and that arbitration could not provide an adequate substitute for judicial proceedings in adjudicating claims under those statutes." *McDonald*, 104 S.Ct. at 1803.[7]

McNair argues, apparently from the premise that constitutional rights are at least as important as statutory rights, that the reasoning of these cases applies to his claim that he has been deprived of constitutional rights, though it lacks a specific statutory basis. Accordingly, McNair argues, the arbitration decision is not entitled to preclusive effect and he is not barred by the grievance procedure from seeking judicial relief.

McNair's analogy to these cases is plainly inapt.[8] Each of them involves a claim of

---

**7.** The Court has identified at least four factors that support this conclusion: (1) an arbitrator, schooled primarily in the law of the shop, may lack the expertise to resolve complex statutory questions; (2) "because an arbitrator's authority derives solely from the contract, an arbitrator may not have the authority to enforce" statutes, *McDonald*, 104 S.Ct. at 803; (3) the union, which generally controls the grievance process, because its interests are not necessarily identical to those of its employees, may not adequately protect their statutory rights; and (4) "arbitral factfinding generally is not equivalent to judicial factfinding." *Id.* at 804.

**8.** We note as an initial matter that McNair assumes that the absence of a specific statutory basis for his claim, because it is based on the Constitution, does not meaningfully distinguish *McDonald*, *Barrentine*, and *Gardner-Denver*. Presumably, McNair's position is that he has a right under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), to assert a claim against

USPS directly under the Constitution. Because McNair's constitutional claim arises from his employment relationship with the government, this is, however, far from a settled question. *See Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1982) (federal worker may not maintain a *Bivens* action for termination allegedly in violation of first amendment when termination was fully reviewable under civil service administrative procedures). It may be that such a right exists in this context which, unlike *Bush v. Lucas*, involves a bargained-for grievance process rather than a comprehensive administrative scheme for the review of personnel decisions. *See id.* at 390, 103 S.Ct. at 2417 (Marshall, J., concurring) ("there is nothing in today's decision to foreclose a federal employee from pursuing a *Bivens* remedy where his injury is not attributable to personnel actions which may be remedied under the federal statutory scheme"). Because McNair's theory is fundamentally flawed for other reasons, we need not decide this issue. We simply note that McNair's

employer action that, without regard to the terms of the collective bargaining agreement, violates a federal statute. The claims did not derive in any way from contractual rights and the employees, therefore, were not attacking the arbitrators' decisions or the arbitration process.

 McNair's case would be arguably analogous if he had alleged, for example, that USPS terminated his employment because of his sex, his race, or his expression of ideas protected by the first amendment. He has not, however, expressly alleged that USPS' conduct in terminating his employment violates any substantive constitutional proscription. Rather, his complaint makes clear that, unlike the employees in *McDonald, Barrentine*, and *Gardner-Denver*, he is attacking the arbitration process and the arbitrator's decision on the existence of just cause under the collective bargaining agreement.[9] We are convinced, therefore, that McNair has not made the kind of allegations necessary to avoid the preclusive effect of the arbitrator's decision. Accordingly, McNair lacks standing to bring this suit.

Although we agree with the district court's decision to dismiss McNair's claim against USPS, we note a procedural defect in the proceedings below. The district court purported to grant USPS' motion for summary judgment rather than its motion to dismiss. We have concluded that dismissal was proper on the ground that McNair lacks standing to sue—a determination that can be made here from the face of the complaint and that robs the court of jurisdiction to hear the case. Accordingly, the district court should not have granted the

motion for summary judgment, but should have dismissed the case for lack of standing. *See* 13A C. Wright, A. Miller, and E. Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3531.15. The case is remanded for the entry of an appropriate judgment of dismissal.

## IV. CONCLUSION.

For the reasons set forth above, the judgment of the district court is vacated, and the case is remanded with instructions to enter judgment dismissing McNair's suit against USPS for lack of standing to sue. McNair shall bear the costs of this appeal.

VACATED and REMANDED.

---

argument slides right over this point; we should not be understood to express an opinion on it.

**9.** The complaint alleges in part:
The collective bargaining agreement provided that the arbitrator's decision be final and binding. Nonetheless, this Court should vacate the arbitration decision and order Mr. McNair reinstated because the arbitration hearing did not comport with fundamental fairness and due process. The arbitrator refused to admit evidence of the prior acquittal, and refused to consider the acquittal in determining the credibility of the witnesses. Thus

Plaintiff was denied the opportunity to present the most critical single piece of evidence in the arbitration proceeding. Furthermore, the arbitrator denied reinstatement because he determined beyond a reasonable doubt that Mr. McNair had committed the theft. This finding was made after a jury had determined exactly the opposite. Such an arbitration result is violative of public policy because it permits the arbitration process to undermine a jury's authority to determine the facts in a criminal case.