Carolyn Edwards BAKER

v.

United States Postmaster General
Anthony M. FRANK, et al.

Civ. A. No. 87–2337.

United States District Court,
W.D. Louisiana,
Shreveport Division.

Oct. 3, 1989.

Laurie W. Lyons, Walker, Tooke, Perlman, Lyons & Clawson, Shreveport, La., for plaintiff.

Susan L. Catler, O'Donnell, Schwartz & Anderson, Washington, D.C., and James Madison Woods, Evans, Feist & Mills, Shreveport, La., for defendants American Postal Workers Union, AFL–CIO and Northwest Louisiana Area Local, APWU, AFL–CIO.

William H. Brown, Jr., Sr. Atty., U.S. Postal Service, Memphis, Tenn., and John R. Halliburton, Asst. U.S. Atty., Shreveport, La., for U.S. Postal Service and U.S. Postmaster General.

## MEMORANDUM RULING

STAGG, Chief Judge.

Plaintiff filed this action against the American Postal Workers Union, AFL–CIO (hereinafter, "APWU") and the Northwest Louisiana Area Local of the APWU (hereinafter, "Local") (collectively referred to as the "Unions") and the United States Postal Service (hereinafter, "Postal Service").[1] Plaintiff alleges that the Unions discriminated against her on the basis of race and violated their duty of fair representation. She also alleges that the Postal Service discharged her without just cause in breach of a collective bargaining agreement. Presently before the court are the defendants' motions to dismiss or, in the alternative, for summary judgment. Because the uncontroverted facts show that there is no genuine issue as to any material fact, the defendants' motions for summary judgment are granted.[2]

The facts show that plaintiff began her employment with the Postal Service on or about October 26, 1985, as a part time flexible, multi-position letter sorting machine (hereinafter, "LSM") trainee in Shreveport, Louisiana. All LSM trainees are assigned to one or more schemes which they must memorize in order to continue their employment with the Postal Service. A scheme is a list linking addresses and letter carrier routes which a clerk must memorize so the clerk can sort mail within a geographic area to the appropriate letter carrier for delivery. An LSM trainee must learn to sort the scheme both by hand and by machine. Clerks are allowed a set number of hours of training to memorize each of the schemes to which they are assigned.

All clerks must pass tests at different points in their training. If an employee fails a test, notice is given that he or she will be terminated at the end of thirty days if the test is not passed within the thirty-day period. Although no additional training time is allowed within this thirty-day period, the employee may take the test once each work day during this period. To pass the test at the end of the machine portion of the training, an employee must sort 250 randomly selected items in their

---

1. Plaintiff's motion to substitute the United States Postal Service for Anthony M. Frank as the proper defendant is GRANTED.

2. As required by Uniform Louisiana Local Rule 2.09, the defendants' motions were accompanied by a statement of material facts as to which the defendants contend there are no genuine issues to be tried. In her opposition to the motions for summary judgment, plaintiff did not include a statement of material facts as to which there exists a genuine issue to be tried. Therefore, the facts set forth in the defendants' statement are deemed admitted. See U.L.L.R. 2.10E & W ("All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule.").

scheme with an accuracy rate of no less than 98% (which translates to no more than five errors in 250 items). If an employee does not pass the test within this thirty-day period, he or she is terminated.

Plaintiff was assigned two schemes to learn, Minden and Jewella, in the fall of 1986. She began her scheme training with the manual training for the Minden scheme, which she finished and passed in early September, 1986. At her request, she began to study the Minden scheme on the machine. She passed the Minden scheme on the machine on September 30, 1986. Thereafter, she failed to pass the Jewella manual scheme. She was notified by letter dated November 10, 1986, that she would be discharged at the end of thirty days unless she passed that test. Plaintiff subsequently passed the manual portion of that test on or about November 12, 1986, and the aforementioned notice of proposed removal was rescinded. Plaintiff did not pass the LSM portion of the Jewella scheme within this thirty-day period, and, therefore, was discharged effective January 25, 1987.

As an LSM trainee, plaintiff was represented for purposes of collective bargaining by the APWU. The APWU and the Postal Service are parties to a collective bargaining agreement governing the terms and conditions of employment of all clerks, including plaintiff, employed by the Postal Service. Article 16 of the agreement provides that the discipline or discharge of any employee must be for "just cause". Article 15 of the agreement contains a multistep grievance procedure for the resolution of any and all disputes arising under the terms of the agreement.

After plaintiff received her final notice of removal, she asked Steward Chuck Norenberg to file a grievance over it. Norenberg requested that plaintiff write a statement explaining why she thought the notice of removal was wrong, including the names of any persons who were witnesses, and explaining what she would like in settlement of her grievance. Plaintiff had numerous discussions with Norenberg as he prepared the grievance.

On January 4, 1987, Norenberg met with Tour Superintendent, Lamar Nelson, at step one of the grievance-arbitration procedure. He repeated what plaintiff had told him about the problem she had had with her training, and requested that the Postal Service rescind the notice of removal and give plaintiff additional time to study her scheme. After their discussion, Nelson told Norenberg that he would get back to Norenberg with the decision. When he did not after five days, Norenberg appealed the grievance to step two.

In addition to getting a statement from plaintiff, Norenberg researched the grievance by looking at plaintiff's training and attendance records. According to her training records, plaintiff had trained at the beginning of her shift virtually every night and had no extended break in her training. In fact, there were no training irregularities during the final months of her training, when she was studying the Jewella scheme on the machine, the test she did not pass.

Norenberg typed a step two grievance appeal form for this grievance and gave it to Gary Carter, who had handled the case at step two. Norenberg informed Carter that he thought plaintiff's training and attendance records did not support her claim of training irregularities.

The grievance was again denied at step two. After receiving the decision, Carter prepared the materials for the appeal to step three. He did not include plaintiff's training records in the appeal packet because he felt they were not helpful to her case. When he finished preparing the step three appeal packet, Carter gave the packet to the president of the Local, Harold Williamson, who appeals cases to step three for the Local.

The computer conducting the LSM scheme test is programmed to turn off when six errors are reached, as the employee is at that point unable to pass the test. Williamson noticed that the last time plaintiff tried to pass the test, the computer turned off after plaintiff had keyed 42 items, including six errors. He also noticed that the second to the last time plaintiff

attempted to pass the test, the computer turned off after she had keyed 67 items with six errors. After reviewing the records, Williamson agreed with Norenberg and Carter that sending plaintiff's training records with the step three appeal would not help the Union win the grievance.

Williamson completed the step three grievance appeal form and sent it to National Business Agent Peter Vogel. Williamson also sent a note to Vogel explaining why the Local had asserted in the first two steps of the grievance procedure that there had been changes during the last lesson of plaintiff's training, but was not sending any documentation to support that claim. Rudy Perez, another National Business Agent for the APWU handled plaintiff's grievance at step three. After a meeting with management step three representative, Joe Falati, management denied the grievance.

After the denial, Perez reviewed the file on the grievance again. Based on his review, Perez concluded that he could not convince an arbitrator to sustain the APWU's grievance and overturn plaintiff's discharge. Perez found nothing in the file to indicate that plaintiff had not received all the training time to which she was entitled.

After Perez made the decision not to appeal, he sent a status letter to the Local, which gave the Local an opportunity to certify the case for arbitration at its own expense. Consistent with the Local's longstanding policy, a decision was made not to certify the case for arbitration.[3]

Fed.R.Civ.P. 56(c) provides for summary judgment where there is no genuine issue as to any material fact. The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of supporting documentation which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The mere existence of a disputed

fact, however, will not alone defeat a summary judgment motion. Rather, "the dispute must be genuine, and the facts must be material." *Professional Managers v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir.1986). The governing substantive law will identify which facts are material and only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Once the moving party has sustained its burden, its opponent must do more than show that there is some metaphysical doubt as to the material facts. *Matsushita Electric Industrial Company v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). In fact, the nonmoving party must come forward with "significant probative evidence demonstrating the existence of a triable issue of fact". *Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 877 (5th Cir.1984).

Plaintiff's claim that the Postal Service breached the "just cause" provision of the collective bargaining agreement appears to be two-fold. First, she claims that there were various training irregularities which precluded her from passing the machine portion of the Jewella scheme. Second, she contends that she should have been transferred, rather than discharged once she failed to qualify. Both contentions are without merit.

During discovery, plaintiff enumerated four alleged training irregularities which she contends occurred during her training: (1) excessive talking, (2) streets being added to her scheme, (3) not being allowed to work her scheme on the floor, and (4) not being given all of her study cards.

Plaintiff testified in her deposition that the loud talking in the training room occurred at a time when she moved from tour three to tour one. Plaintiff's records reflect that this would have occurred around

---

**3.** The evidence reflects that the Local has not certified a case for arbitration after the APWU has determined that it would not arbitrate that case.

September 15, 1986. However, she testified that she complained about the noise and that it had largely abated within two months, or about the time she began training on the machine portion of the Jewella scheme. Interestingly, plaintiff passed the machine portion of the Minden scheme and the manual portion of the Jewella scheme during the two-month period during which she contends the noise was at its peak.

As to plaintiff's contention that she was not allowed to work her schemes on the floor, she admits that this alleged irregularity occurred while she was working on the Minden scheme. Plaintiff passed that scheme. Further, she admits that she was allowed to work the mail on the floor while training on the Jewella scheme. Thus, this obviously could have had no effect on her failing the machine portion of the Jewella scheme.

The same can be said for plaintiff's assertion that she was not given all of her study cards. This problem occurred when she was studying the Minden scheme, which she passed. Again, this could have had no effect on her failing the machine portion of the Jewella scheme.

Plaintiff's final contention, i.e., that new streets were added while she was studying the Jewella scheme, also fails. The defendants admit that this did, in fact, occur. However, plaintiff's training records reflect that she was given additional time to review these streets. Additionally, plaintiff admits that she passed the test covering these new streets.

■ The court likewise rejects plaintiff's contention that she should have been transferred, rather than fired. First, it is clear that plaintiff had not taken the necessary tests to qualify as a mail carrier or handler. In her deposition, plaintiff admitted that the only position for which she was qualified was that of a manual distribution clerk. Second, the court finds that plaintiff's failure to qualify on the LSM provided the Postal Service with the option to either discharge plaintiff or transfer her to a new position. Plaintiff has not rebutted the defendants' evidence that there were no other positions available. In any event,

the court concludes that the Postal Service was within its discretion in firing plaintiff, rather than transferring her to another position.

■ Even if plaintiff could show a breach of the "just cause" provision of the collective bargaining agreement, summary judgment would still be appropriate. Before plaintiff can maintain the instant action, she must have first exhausted the remedies available to her under the grievance-arbitration process set out in the contract out of which the controversy arises. See, *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); *Petersen v. Rath Packing Company*, 461 F.2d 312, 315 (8th Cir.1972); *McNair v. United States Postal Service*, 768 F.2d 730, 735 (5th Cir.1985). Plaintiff does not dispute that her grievance concerning her discharge was not taken beyond step three of the grievance procedure.

■ The court recognizes that the exhaustion requirement is relaxed if plaintiff demonstrates that her failure to exhaust the grievance-arbitration procedure was due to the failure of her collective bargaining representative to properly represent her in the process. *Bowen v. USPS*, 459 U.S. 212, 221–222, 103 S.Ct. 588, 594–595, 74 L.Ed.2d 402 (1983); *Bache v. AT & T*, 840 F.2d 283, 287 (5th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 219, 102 L.Ed.2d 210 (1988). Thus, plaintiff must show that the Union breached its duty of fair representation to her in declining to process her grievance over her discharge to arbitration. Thus, this issue turns on whether the Union breached any duty of fair representation when it declined to process plaintiff's grievance beyond step three. The court concludes that it did not.

■ A union breaches its duty only when it acts in an arbitrary, discriminatory, or bad faith manner. *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). Unions need not arbitrate every case. *Id.* at 191–192, 87 S.Ct. at 917–918. Rather, unions are afforded broad discretion to act in what they perceive to be their members' best interests.

*Seymour v. Olin Corp.*, 666 F.2d 202, 208 (5th Cir.1982). A mistake in judgment on the part of the Union is not sufficient to make out a breach of its duty of fair representation. *Coe v. United Rubber, Cork, Linoleum & Plastic Workers*, 571 F.2d 1349, 1350 (5th Cir.1978).

 The evidence before the court indicates that the Unions investigated plaintiff's grievance thoroughly. Union officials were apprised of the nature of her complaints, reviewed her training records and concluded that plaintiff's complaints were without merit. Even so, they processed her grievance to step three. A decision was then made by the agent of the National Union that the grievance was without merit and should not be taken beyond step three to arbitration. Plaintiff has come forward with no evidence that the Unions breached any duty of fair representation in handling her grievance. Mere reliance on her pleadings is not sufficient to withstand summary judgment on this issue.

As mentioned, plaintiff also argues that the Unions violated Title VII by refusing to arbitrate the grievance over her because of her race. The evidence before the court indicates that Ruby Perez, who made the decision on behalf of the APWU, had no knowledge at the time he made his decision that plaintiff is black. Plaintiff does not dispute that none of the information contained in the files indicates the race, color, creed, religion or age of the grievant. Because plaintiff has come forward with no evidence to rebut the defendants' contentions that the decision was made without regard to race, summary judgment is appropriate.

Plaintiff's race discrimination claim against the Local is similarly without merit. It is undisputed that the Local has not arbitrated any case in the last fifteen years. The evidence before the court indicates that the Local's decision not to arbitrate plaintiff's claim was unrelated to plaintiff's race. Plaintiff has come forward with no evidence which would create a genuine issue of material fact on this issue.

In sum, plaintiff has failed to come forward with any evidence establishing a genuine issue of material fact with regard to the liability of these defendants. As the Supreme Court has stated, the purpose of summary judgment is to isolate and dispose of factually unsupported claims. *Celotex, supra,* 106 S.Ct. at 2555. Plaintiff has failed to support any of her claims with evidence. Accordingly, the defendants' motions for summary judgment are GRANTED.

THUS DONE AND SIGNED.