COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-09-458-CV

 

 

THE CITY OF FORT WORTH, AND                                       APPELLANTS

THE CITY OF FORT WORTH 

FIREFIGHTERS= AND POLICE 

OFFICERS= CIVIL SERVICE 

COMMISSION                                                                                     

                                                   V.

 

SAMUEL DAVIDSAVER                                                           APPELLEE

 

                                              ------------

 

           FROM
THE 153RD DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION 

 

                                              ------------

I. 
INTRODUCTION








Appellants
City of Fort Worth and City of Fort Worth Firefighters= and
Police Officers= Civil Service Commission bring
this interlocutory appeal challenging the trial court=s order
denying their plea to the jurisdiction. 
In a single issue, appellants argue that appellee Samuel Davidsaver=s claims
stemming from the scoring of his police officer promotional exam may be raised
only by the Fort Worth Police Officers Association and that he lacks standing
to pursue these claims individually in district court.  Because we agree that Officer Davidsaver does
not have standing to sue appellants, we reverse the trial court=s order
and dismiss Officer Davidsaver=s claims
against appellants for lack of subject matter jurisdiction.

II. 
BACKGROUND

Officer
Davidsaver, a sergeant with the Fort Worth Police Department, sat for the
department=s promotional exam for the rank
of lieutenant on September 22, 2009. 
According to Officer Davidsaver, the notice of the exam published by the
City of Fort Worth Firefighters= and
Police Officers= Civil Service Commission (the ACommission@) stated
that bonus points for seniority would be added to each candidate=s exam
score pursuant to the guidelines of the local government code.  However, when the final test scores were
posted, his bonus points were calculated instead according to the procedures
contained in the Meet and Confer Agreement between the City of Fort Worth and
the Fort Worth Police Officers Association (the AAgreement@), not
the local government code. Officer Davidsaver contends that as a result, he
ranked lower on the list of promotion candidates than he would have ranked had
the local government code=s bonus points system been
applied.








Believing
that his final test score had been detrimentally affected by the change in
bonus score calculation procedures, Officer Davidsaver and his attorney sent a
letter to the Fort Worth Police Officers Association (the AAssociation@) on
October 19, 2009, asserting that seniority bonus points should have been
allocated to him under the local government code instead of the Agreement.  The Association forwarded Officer Davidsaver=s
complaint to its Dispute Resolution Committee, which informed him that it would
meet to review his complaint on November 11, 2009. 








Before
this meeting could take place, Officer Davidsaver sued the City, the
Commission, and the Association, requesting a judgment declaring that the
provisions of the local government code, and not the Agreement, applied to his
promotional exam.  Officer Davidsaver
also requested a temporary restraining order and an injunction preventing the
defendants from applying the Agreement=s
provisions to the exam results and from promoting any candidates on the basis
of exam scores calculated under the Agreement=s
provisions.  The City and the Commission
filed a plea to the jurisdiction challenging Officer Davidsaver=s
standing to sue on November 5, 2009.  The
Association=s Dispute Resolution Committee
held its meeting on November 11, 2009, and it sent Officer Davidsaver=s
counsel a letter the next day informing him that it had voted against taking
any further action on Officer Davidsaver=s
complaint.  The trial court denied the
City and the Commission=s plea to the jurisdiction in a
written order dated December 7, 2009.[1]  The City and the Commission now appeal.[2]

III.  LAW
AND APPLICATION TO FACTS

A.     Local Government Code and Collective
Bargaining Agreements








Chapter
143 of the local government code governs municipal civil service for
firefighters and police officers in Texas. 
Tex. Loc. Gov=t Code Ann. '' 143.001B.363
(Vernon 2008 & Supp. 2009).  Its
purpose is Ato secure efficient fire and
police departments composed of capable personnel who are free from political
influence and who have permanent employment tenure as public servants.@  Id. '
143.001(a).  A fundamental principle of
civil service is that appointments must be made according to merit and
fitness.  Klinger v. City of San
Angelo, 902 S.W.2d 669, 671 (Tex. App.CAustin
1995, writ denied). One critical aspect of civil service protection is the
right to seek promotion by way of competitive examinations.  Lee v. City of Houston, 807 S.W.2d
290, 295 (Tex. 1991).  Chapter 143
provides a system for classification of police officers through the
administration of promotional examinations.  
See Tex. Loc. Gov=t Code
Ann. '' 143.021B.038.








Chapter
143 also allows a municipality the size of Fort Worth to exercise local control
over terms and conditions of police officer employment.  See id. '' 143.301B.313.[3]  This local control, however, extends only to
those terms and conditions on which the city and an association that is
recognized as the sole and exclusive bargaining agent for all police officers
in the municipality agree.  See id.
'
143.303(a).  On November 16, 2006, the
Fort Worth City Council adopted a proposition authorizing the City to recognize
an employee association as a sole and exclusive bargaining agent for the
municipal police officers and authorizing the City to make agreements with the
employee association as provided by state law.[4]  Finally, on January 30, 2007, the city
council passed a resolution recognizing the Association as the sole and
exclusive bargaining agent for all Fort Worth police officers.  See id. ' 143.304(a).[5]

B.     The Meet and Confer Agreement








Thereafter,
on November 11, 2008, the Association and the City signed the Meet and Confer
Agreement.  Article 15 of the Agreement
addresses promotions in officer classification, and section 4 of that article
specifically addresses additional points added to promotional exam test scores
for the ranks of lieutenant and captain according to the level of the candidate=s
education and to the candidate=s number
of years in rankCone point for each complete year
that the officer has served in the current classification.  Section 143.033 of the local government code,
however, adds one point for each year of seniority as a classified police officer
in the department without regard to number of years in each rank, and it does
not add points for educational degrees.  See
id. ' 143.033(b).  Officer Davidsaver argued in his letter to
the Association and in his lawsuit that under the terms of Article 15, the
Agreement=s point system was not yet in
effect at the time he took the exam on September 22, 2009; therefore, the point
system of the local government code should have been applied to his exam score.[6]

C.     Standing to Sue Under the Agreement








In a
single issue, appellants contend that the trial court has no jurisdiction over
Officer Davidsaver=s suit because only the
Association has the right to assert claims against appellants that arise under
the Agreement.  They argue that because
Officer Davidsaver is not a party to the Agreement, he has no standing to
complain of a breach of the Agreement or to demand enforcement of its
provisions.  Appellants assert that the
trial court failed to recognize Officer Davidsaver=s lack
of standing to challenge actions taken under the Agreement and therefore erred
by denying their plea to the jurisdiction. 


 

1.     Standard of Review








A plea
to the jurisdiction challenges the trial court=s
authority to determine the subject matter of the action.  Tex. Dep=t of
Transp. v. Jones, 8 S.W.3d 636, 638 (Tex. 1999).  Whether a trial court has subject matter
jurisdiction and whether a pleader has alleged facts that affirmatively
demonstrate the trial court=s
subject matter jurisdiction are questions of law that we review de novo. Tex.
Dep=t of Parks & Wildlife v.
Miranda, 133 S.W.3d 217, 226 (Tex. 2004); Tex. Natural Res. Conservation
Comm=n v. IT‑Davy, 74
S.W.3d 849, 855 (Tex. 2002).  The
determination of whether a trial court has subject matter jurisdiction begins
with the pleadings.  Miranda, 133
S.W.3d at 226.  The plaintiff has the
burden to plead facts affirmatively showing that the trial court has
jurisdiction.  Tex. Ass=n of
Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex.
1993); Univ. of N. Tex. v. Harvey, 124 S.W.3d 216, 220 (Tex. App.CFort
Worth 2003, pet. denied).  We construe
the pleadings liberally in favor of the pleader, look to the pleader=s
intent, and accept as true the factual allegations in the pleadings.  See Miranda, 133 S.W.3d at 226, 228; City
of Fort Worth v. Crockett, 142 S.W.3d 550, 552 (Tex. App.CFort
Worth 2004, pet. denied). 

If a
plea to the jurisdiction challenges the existence of jurisdictional facts, we
consider relevant evidence submitted by the parties when necessary to resolve
the jurisdictional issues raised, as the trial court is required to do.  See Bland Indep. Sch. Dist. v. Blue,
34 S.W.3d 547, 555 (Tex. 2000) (confining the evidentiary review to evidence
that is relevant to the jurisdictional issue). 
We take as true all evidence favorable to the nonmovant and indulge
every reasonable inference and resolve any doubts in the nonmovant=s favor.
Miranda, 133 S.W.3d at 228.  If
the evidence creates a fact question regarding the jurisdictional issue, then
the trial court cannot grant the plea to the jurisdiction, and the fact
question will be resolved by the fact finder. 
Id. at 227B28; Bland, 34 S.W.3d at
555.  If the relevant evidence is
undisputed or fails to raise a fact question on the jurisdictional issue,
however, the trial court rules on the plea to the jurisdiction as a matter of
law.  Miranda, 133 S.W.3d at 227B28; Bland,
34 S.W.3d at 555.

2.     Interpreting the Intent of the Agreement








Officer
Davidsaver argues that the trial court did not err by denying appellants= plea to
the jurisdiction because the Agreement itself contemplates that police officers
have standing under the Agreement.  He
points to Article 19 of the Agreement, titled AComplete
Agreement,@ which reads as follows:

Section 1.  The
Parties agree that each has had the full and unrestricted right and opportunity
to make, advance, and discuss all matters properly within the province of
bargaining for a Meet and Confer agreement. 
This Agreement constitutes the full and complete Agreement of the
Parties and there are no others, oral or written, except as herein
contained.  No alteration, amendment or
variation of this Agreement=s terms shall bind the Parties unless made,
executed and voted on by the Parties as required by Subchapter I of chapter 143
of the TLGC.  A failure of the City or
Officer[[7]]
to insist in any one or more instances upon performance of any terms or condition
of this Agreement shall not be considered as a waiver or relinquishment of the
right of the City or the Association to future performance of any such term or
condition, and the obligations of the City and the Association to such future
performance shall continue in full force and effect.  [Emphasis supplied.] 

 

Officer Davidsaver contends that
the plain meaning of this provision gives police officers the authority to
insist upon the performance of the Agreement, so police officers must have
standing to sue under the Agreement.








Our
primary concern when interpreting a contract is to ascertain and give effect to
the parties= intent.  Perry Homes v. Cull, 258 S.W.3d 580,
606 (Tex. 2008), cert. denied, 129 S. Ct. 952 (2009).  We therefore focus on the language used in
the contract because that is the best indication of the parties=
intent.  See id.  We examine the entire contract in an effort to
harmonize and effectuate all of its provisions so that none are rendered
meaningless.  Seagull Energy E &
P, Inc. v. Eland Energy, Inc., 207 S.W.3d 342, 345 (Tex. 2006). Therefore,
we do not give controlling effect to any single provision; instead, we read all
of the provisions in light of the entire agreement.  See id.








The
Agreement itself is clear:  the
definition of AParties@ refers
only to the City and the Association, not to police officers.[8]  The Agreement=s
preamble states that the Agreement is entered into by the City and the
Association and that the Agreement=s Aintent
and purpose@ is Ato
achieve and maintain harmonious relations between the Parties and discuss
issues of mutual concern.@ 
The Agreement also provides a specific dispute resolution procedure Ato
provide a just and equitable method for resolving disagreements between the
Parties regarding the interpretation of the provisions of this Agreement.@ Article
8 of the Agreement, which details this dispute resolution procedure, provides
that the first step of the procedure is set in motion by a police officer=s
submitting a written dispute related to the interpretation of the Agreement to
the Association.  The Dispute Resolution
Committee then meets to decide whether such a dispute actually exists; if the
committee decides that the dispute does exist, then the Association prepares a
formal written grievance and proceeds to step two of the dispute resolution
procedure.[9]








Examining
the Agreement as a whole, as we must, we hold that the parties to the Agreement
did not intend to give nonparty, individual police officers standing to sue
under the Agreement.  The dispute
resolution procedure for resolving disagreements regarding the Agreement=s
interpretation addresses disagreements between the PartiesCthat is,
the Association and the CityCand not
disagreements between individual police officers and the City.  The fact that Article 19 contemplates that a
police officer may fail to insist upon the Agreement=s
performance does not automatically lead to a conclusion that the parties must
have intended police officers to have standing. 
Rather, the mention of AOfficer@ in
Article 19 is merely a recognition that dispute resolution proceedings under
Article 8 can be instituted by an individual police officer=s
written dispute, but even if no written dispute is submitted by a police
officer, that lack of submission does not operate to waive any Party=s right
to insist upon performance.  Therefore,
reading Article 19 in light of the entire agreement and not giving controlling
effect to any single provision, we conclude that the Agreement does not give
standing to individual police officers.  See
Seagull Energy, 207 S.W.3d at 345; see also City of Houston v. Williams,
290 S.W.3d 260, 270B71 (Tex. App.CHouston
[14th Dist.] 2009, pet. granted) (holding that individual fire fighters did not
have standing to sue for alleged breaches of an agreement between the fire
fighters=
association and the city). 

3.     Interpreting the Intent of the Local
Government Code

Officer
Davidsaver also argues that the local government code gives him standing to sue
because, regardless of the Agreement=s
dispute resolution procedures, Subchapter I vests the district court with
jurisdiction over his dispute as follows:

The district court of the judicial district in which the municipality
is located has full authority and jurisdiction on the application of either
party aggrieved by an act or omission of the other party related to a right, duty,
or obligation provided by a written agreement . . . .  The court may issue proper restraining
orders, temporary and permanent injunctions, or any other writ, order, or
process, including a contempt order, that is appropriate to enforce the
agreement.

 








Tex. Loc. Gov=t Code
Ann. ' 143.306(c).  But the very next section, titled AAgreement
Supersedes Conflicting Provisions,@
prioritizes the terms of a written agreement between a public employer and an
association over the terms of the statute:

(a) An agreement under this subchapter supersedes
a previous statute concerning wages, salaries, rates of pay, hours of work, or
other terms and conditions of employment to the extent of any conflict with the
statute.

 

(b) An agreement under this subchapter preempts
any contrary statute, executive order, local ordinance, or rule adopted by the
state or a political subdivision or agent of the state, including a personnel
board, a civil service commission, or a home‑rule municipality.

 

(c) An agreement under this subchapter may not
diminish or qualify any right, benefit, or privilege of an employee under this chapter
or other law unless approved by a majority vote by secret ballot of the members
of the association recognized as a sole and exclusive bargaining agent.

 

Id. '
143.307.  Officer Davidsaver acknowledges
section 143.307 but asserts that the legislature could not have intended to
construct a statute so that one section may overrule the immediately preceding
section.








In
construing statutes, we ascertain and give effect to the legislature=s intent
as expressed by the statute=s
language.  City of Rockwall v. Hughes,
246 S.W.3d 621, 625 (Tex. 2008).  When
the text is clear, it is determinative of that intent, Entergy Gulf States,
Inc. v. Summers, 282 S.W.3d 433, 437 (Tex. 2009) (op. on reh=g), and
we give meaning to the language consistent with other provisions in the
statute, Tex. Dep=t of
Transp. v. City of Sunset Valley, 146 S.W.3d 637, 642 (Tex.
2004).  Our practice when construing a
statute is to recognize that the words that the legislature chooses should be
the surest guide to legislative intent.  Entergy,
282 S.W.3d at 437.  We thus construe the
text according to its plain and common meaning unless a contrary intention is
apparent from the context or unless such a construction leads to absurd
results. Hughes, 246 S.W.3d at 625B26.  We also presume that the legislature intended
a just and reasonable result by enacting the statute.  Id. at 626 (citing Tex. Gov=t Code
Ann. '
311.021(3) (Vernon 2005)).








We
disagree with Officer Davidsaver=s
contention that section 143.306 authorizes suit in district court regardless of
the Agreement=s terms to the contrary.  The text of section 143.307 plainly gives the
City and the Association the authority to modify statutory terms and conditions
of employment by agreement.  Under this
section, a validly executed agreement supersedes any conflicting statutory
provisions and preempts any contrary statute. 
Further, the statute expressly states that A[a]
municipality may not be denied local control over . . . terms and
conditions of employment, or other personnel issues on which the public
employer and an association that is recognized as the sole and exclusive
bargaining agent for all fire fighters or police officers in the municipality
agree.@  Tex. Loc. Gov=t Code
Ann. ' 143.303(a)
(emphasis added).  If the City and the
Association cannot agree on how to modify a particular term or condition of
employment, then that term or condition remains governed by applicable
statutes, local ordinances, and civil service rules.  See id.  








In other
words, the clear text of these two sections shows that the legislature=s intent
was to enact a statute that established default terms and conditions of police
officer employment but also granted local governments and police officer
associations the power to modify those terms by mutual agreement.  It is not an absurd result to recognize the
legislature=s intent to allow a city to
exercise some local control over police officer employment and to allow police
officers, through an association serving as their sole and exclusive bargaining
agent, to have some input in the process.[10]  We therefore conclude that while section
143.306 states that the district court has Afull
authority and jurisdiction@ over a
suit on the Agreement, it does not operate to grant the trial court
jurisdiction over Officer Davidsaver=s cause
of action in this case because the plain language of section 143.307 clearly
allows the Agreement=s arbitration provision to
preempt the statute=s authorization of suit in
district court.  See id. '' 143.306B.307.  

Similarly,
we reject Officer Davidsaver=s
argument that the district court has jurisdiction in this case because the
local government code does not convey jurisdiction over his dispute to the
Dispute Resolution Committee.  Officer
Davidsaver is correct that the local government code does not specifically
designate the Dispute Resolution Committee as the entity with primary or
exclusive jurisdiction over his dispute; rather, it is Article 8 of the
Agreement that gives the Dispute Resolution Committee the power to evaluate a
police officer=s complaint and decide whether
the Association should escalate the dispute to the next step in the dispute
resolution procedure.  But the Agreement
receives its authorization to establish this dispute resolution procedure as an
alternative to lawsuits in district court from the local government code
itself. See id.  Accordingly, we
conclude that the local government code does not give Officer Davidson standing
to bring this dispute in district court.

D.     Standing
to Sue Because of the Association=s Alleged Breach of          Duty of Fair Representation

 


















Even if
Officer Davidsaver has failed to show that either the Agreement or the local
government code established his standing to sue, he may still survive a plea to
the jurisdiction if he prevails on his argument that the Association, as his
bargaining agent, breached its duty of fair representation in its handling of
his grievance.  See McNair v. U.S.
Postal Serv., 768 F.2d 730, 735 (5th Cir. 1985) (stating that if a union
has breached its duty of fair representation, an employee=s right
to seek redress in court is not foreclosed by the results of the grievance
process).  A union retains considerable
discretion in processing the grievances of its members, but it must represent
all employees fairly in its enforcement of a collective bargaining agreement. Landry
v. Cooper/T. Smith Stevedoring Co., 880 F.2d 846, 852 (5th Cir. 1989).  A breach of this duty of fair representation
occurs only when the union=s conduct
toward an individual member Ais
arbitrary, discriminatory, or in bad faith.@  Vaca v. Sipes, 386 U.S. 171, 190, 87
S. Ct. 903, 916 (1967).[11]   Because
a union has discretion in handling its individual members=
complaints, an employee has no absolute right to have his grievance taken to
arbitration or to any other level of the grievance process.  Landry, 880 F.2d at 852.  An employee does, however, have the right to
expect that his employer will not Aarbitrarily
ignore a meritorious grievance or process it in perfunctory fashion.@  Vaca, 386 U.S. at 191, 87 S. Ct. at
917.  Thus, the duty of fair
representation imposes an obligation on a union to investigate a grievance in
good faith and to prosecute a grievance with reasonable diligence unless it
decides in good faith that the grievance lacks merit or for some other reason
should not be pursued.  Landry,
880 F.2d at 852.  The critical question
in determining whether a union has breached its duty of fair representation is
whether its conduct was arbitrary, discriminatory, or in bad faith, so that it
undermined the fairness or integrity of the grievance process.  Id. (citing Hines v. Anchor Motor
Freight, Inc., 424 U.S. 554, 567, 96 S. Ct. 1048, 1058 (1976)).

Accordingly,
to survive appellants= plea to the jurisdiction,
Officer Davidsaver was required to plead facts affirmatively showing that the
Association=s handling of his grievance was
arbitrary, discriminatory, or in bad faith. 
Officer Davidsaver does not allege that the Association or its Dispute
Resolution Committee was hostile toward him or that he was treated unfairly
during the dispute resolution proceedings. 
Instead, he points solely to the Association=s
refusal to file his dispute as a formal grievance as evidence establishing a
breach of its duty of fair representation, claiming that the Association Afailed
to represent the interests of Davidsaver in any way@ and Arefused
to become involved in the grievance process@ for him
by declining to escalate his complaint.








The
decision whether to escalate Officer Davidsaver=s
complaint, however, was within the Association=s
discretion.  See Landry, 880 F.2d
at 852.  Furthermore, the only evidence
in the record of the manner in which the Association handled Officer Davidsaver=s
complaint shows that it properly followed the Agreement=s dispute
resolution procedure.  It notified
Officer Davidsaver of the date and time that the Dispute Resolution Committee
would meet to review his dispute; it encouraged him to appear at the meeting
and present his dispute in person to the committee; it allowed him to be
represented by his counsel at the meeting; it considered his statement as well
as exhibits presented by his counsel; it provided all committee members with
copies of his original written dispute, the exhibits, and the Agreement; and
then, after reviewing the information and deliberating, it took a vote on the
issue of whether to prepare a formal written grievance for the police
chief.  In light of these undisputed
facts, the Association=s decision not to file a formal
written grievance, standing alone, is insufficient to establish that its
conduct was arbitrary, discriminatory, or in bad faith.  Accordingly, we conclude that the evidence
fails to raise a fact question on the issue of breach of the Association=s duty
of fair representation and hold that Officer Davidsaver has failed to establish
standing under this theory as well.[12]  See Miranda, 133 S.W.3d at 227B28; Bland,
34 S.W.3d at 555.  

 

 








IV. 
CONCLUSION

Because
the pleadings and the undisputed evidence show that Officer Davidsaver does not
have standing to sue under either the Agreement or the applicable statutes as a
matter of law, we sustain appellants= issue
and hold that the trial court erred by denying their plea to the
jurisdiction.  We reverse the trial court=s order
denying appellants= plea to the jurisdiction and
dismiss Officer Davidsaver=s claims
against appellants. 

 

 

BOB MCCOY

JUSTICE

 

PANEL:  WALKER and MCCOY, JJ.;
and WILLIAM BRIGHAM (Senior Justice, Retired, Sitting by Assignment).

 

DELIVERED:  July 29, 2010

 

                                                    











[1]That same day, the trial
court also issued written orders denying Officer Davidsaver=s applications for a
temporary restraining order and a temporary injunction.





[2]The Association did not
join appellants in filing their plea to the jurisdiction and is not a party to
this appeal.





[3]This subchapter of
Chapter 143, Subchapter I, applies to municipalities with a population of
460,000 or more that operate under a city manager form of government.  The parties do not dispute that Fort Worth
qualifies.  See U.S. Census Bureau, U.S. Dep=t of Commerce, Profiles of General Demographic
Characteristics: 2000 Census of Population and Housing: Texas 713 (2001), available
at http://www.census.gov/prod/cen2000/dp1/2kh48.pdf (reporting Fort Worth=s total population as
534,694); Fort Worth, Tex., Code Part I, ch. 5, ' 1 (1986) (requiring
the city council to appoint a city manager, who shall be the chief
administrative and executive officer of the city).





[4]As required by the local
government code, the resolution adopting this proposition was preceded by an
election at which all qualified voters of Fort Worth could vote on the
proposition.  The city council canvassed
the results of the election and found that the proposition had passed by a majority
of the votes cast.  See id.
' 143.3015.





[5]Section 143.304 provides
that the public employer may recognize an association that submits a petition
signed by a majority of the paid police officers in the municipality, excluding
the head and assistant department heads of the department, as the sole and
exclusive bargaining agent for all of the covered police officers unless
recognition of the association is withdrawn by a majority of the covered police
officers.  See id.  This resolution recited that the Association
had presented a petition, validly signed by a majority of the paid police
officers, requesting the Association to be recognized as the sole and exclusive
bargaining agent on behalf of all Fort Worth police officers.  Fort Worth, Tex., Res. 3451-01-2007 (Jan. 30,
2007).     





[6]Article 15, section 3B
states,

Effective upon the
expiration or earlier exhaustion of any promotional eligibility list for
sergeant, Lieutenant[,] or Captain in existence on October 1, 2009, an Officer
will not be eligible to take a promotional eligibility examination for
promotion to sergeant, Lieutenant[,] or Captain unless the Officer has served
in the Department in the next lower classification . . . for at least three (3)
years immediately before the date the promotional eligibility examination is
held.

Officer
Davidsaver=s position below was that
the September 2009 exam promotional eligibility list had not expired or been
exhausted before October 1, 2009, so the Agreement should be interpreted to
read that the September 2009 exams would be scored according to the local
government code, not the Agreement.





[7]The Agreement defines an AOfficer@ as a sworn police
officer employed in the City of Fort Worth Police Department who is covered by
the Agreement pursuant to Subchapter I of Chapter 143 of the local government
code.  See Section III.A., supra.





[8]The Agreement specifies
that A>Party= or >Parties= means the City of Fort Worth and the Fort
Worth Police Officers= Association.@





[9]In step two, the
Association delivers its written grievance to the chief of police; in step
three, the Association delivers it to the civil service director, who then
forwards it to the city manager.  If the
dispute remains unresolved, the next step is binding arbitration.  See Tex. Loc. Gov=t Code Ann. ' 143.306(b) (stating
that an agreement between a public employer and an association Amay establish a procedure
by which the parties agree to resolve disputes related to a right, duty, or
obligation provided by the agreement, including binding arbitration on
interpretation of the agreement@).





[10]Indeed, proponents of the
law pointed out that giving cities local control through negotiated agreements Acould help both city
management and city employees by establishing principles or guidelines that
would not have to be revisited annually or with changing administrations and,
in doing so, could help stabilize the budget process and other city
deliberations.@  House Research Org., Bill Analysis, Tex. S.B.
863, 74th Leg., R.S. (1995).  Furthermore,
Acollective bargaining is
a legitimate form of negotiation[,] and associations can represent important
employee and public priority viewpoints that may be overlooked even by the most
conscientious city manager.@  Id.





[11]The parties apparently
assume that federal law applies to Officer Davidsaver=s argument.  State law causes of action for violation of a
collective bargaining agreement are displaced by section 301 of the Labor
Management Relations Act of 1947.  29
U.S.C.A. ' 185(a) (West 1998);
Metro. Transit Auth. v. Burks, 79 S.W.3d 254, 256B57 (Tex. App.CHouston [14th Dist.]
2002, no pet.).  Further, a labor
organization=s duty of fair
representation is a statutory one imposed by the National Labor Relations
Act.  29 U.S.C.A. '' 151B69 (West 1998); Vaca,
386 U.S. at 177, 87 S. Ct. at 910. 
However, the City is specifically exempted from both these acts, so it
is questionable whether this statutory duty extends to the Association.  See 29 U.S.C.A. '' 142(3), 152(2)
(both excluding Aany State or political
subdivision thereof@ from the statutes= definition of Aemployer@), 152(5) (defining a
labor organization as one that deals with Aemployers@).

Regardless, we agree with the concept that a union=s duty of fair
representation Aarises by implication as
a necessary corollary to the right of exclusive representation.@  Bowman v. Tenn. Valley Auth., 744 F.2d
1207, 1212 (6th Cir. 1984) (holding that a federal corporation employees= union has a federal common
law duty of fair representation identical to that of a union whose members all
work for a private employer), cert. denied, 470 U.S. 1084 (1985).  Accordingly, we may look to the
well-developed body of federal labor law for guidance in connection with
Officer Davidsaver=s allegations of breach
of the Association=s duty of fair
representation.  See Flores v. Metro.
Transit Auth., 964 S.W.2d 704, 707 (Tex. App.CHouston [14th Dist.]
1998, no pet.) (applying the federal statute of limitations to a claim against
a public employer, even though the public employer was exempt from federal
labor acts, because the claim involved interpretation of a labor agreement and
strongly resembled a federal unfair labor practices charge).





[12]Appellants also assert
that the trial court had no jurisdiction over Officer Davidsaver=s claims because he had
not exhausted the Agreement=s dispute resolution process before filing
suit.  Because we have determined that
the trial court had no jurisdiction because Officer Davidsaver lacked standing
to sue, we need not reach this argument. 
See Tex. R. App. P. 47.1.